(No. 56733.—

JOSIE STARKEY, Appellee, v. THE CIVIL SERVICE COMMISSION *et al.*, Appellants.

*Opinion filed June 9, 1983.—Rehearing denied September 30, 1983.*

92

Tyrone C. Fahner and Neil F. Hartigan, Attorneys General, of Springfield (Karen Konieczny, Assistant Attorney General, of Chicago, of counsel), for appellant.

Gerald A. Goldman, of Gerald A. Goldman, Chartered, of Chicago (Benjamin P. Hyink, of counsel), for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Josie Starkey, an unemployment insurance

claims supervisor for the Illinois Department of Labor (Department), was discharged on July 6, 1979, for allegedly "establishing" a fraudulent claim for her mother, Lillie McCoy. Following a hearing, the Civil Service Commission's hearing officer recommended that respondent be retained. That recommendation was rejected by the Commission, which found that the charges against respondent had been proved. Pursuant to a complaint for administrative review (Ill. Rev. Stat. 1979, ch. 110, par. 267), the circuit court of Cook County affirmed the Commission's decision. A divided appellate court reversed (105 Ill. App. 3d 904), and we allowed the State's petition for leave to appeal.

The original charges filed against plaintiff on June 15, 1979, stated that she was suspended pending discharge for conduct unbecoming a State employee. Specifically, she was charged with improperly establishing a Special Unemployment Assistance (SUA) claim for Lillie McCoy "by entering an affidavit of wages from an employer for whom Lillie L. McCoy had not worked during the base period." Further it was stated that, based upon the fraudulently declared wages shown in the claim, eight benefit checks totaling $2,028 were issued to Mrs. McCoy. On July 2, plaintiff was personally served with notice that she was discharged, effective July 6. The written charges previously referred to had been approved by the Director of the Department of Personnel, and plaintiff was advised of her right to be heard in her own defense. The charges were accompanied by a summary of an investigative report advising plaintiff of the outcome of the Department's internal investigation. The specific discrepancies and the false information contained in the McCoy application, which respondent was charged with preparing, were outlined, and the report concluded with the following: "An unsigned application with false statements supported by unverified wages is a false claim. A false claim prepared by [a Department] employee for friends or family is fraud."

On July 13 plaintiff requested a hearing pursuant to section 11 of the Personnel Code (Ill. Rev. Stat. 1979, ch. 127, par. 63b111). At the commencement of the August 6 hearing the State moved to orally amend the charges in two respects: to change the language that plaintiff established an improper claim "by entering an affidavit of wages" to read "by causing to be entered an affidavit of wages," and to change the total number of checks received by the mother from eight to 13. Plaintiff's counsel objected, but declined a proffered continuance for any necessary further investigation, and the hearing officer allowed the amendment.

The evidence presented at the hearing included the testimony of plaintiff's immediate supervisor, two officers of the Illinois Department of Law Enforcement, a supervisor for the Department's internal investigations section, the evidence depositions of Mabel and William Holmquist and Julian Johnson, employers for whom the mother had previously worked, the testimony of the mother, and several exhibits; plaintiff testified in her own behalf. The testimony of each witness need not be detailed here for the purpose of establishing that Mrs. McCoy, a domestic worker, fraudulently received unemployment benefits totaling over $2,000, for that fact is undisputed. Her application for benefits, which was admittedly prepared in part by plaintiff, contained false information and was necessary to initiate the process which resulted in the fraud. Mrs. McCoy had not been employed by the named employer, Holmquist, for several years, and while she may have worked sporadically for another family, the Johnsons, during the 1976 period in question, it is conceded here that she clearly did not earn a salary which would have entitled her to any unemployment benefits. In fact, while she did not produce pay stubs or income tax returns although ordered by subpoena to do so, Mrs. McCoy admitted that she reported no personal income on her tax return, filed jointly with her husband, for

the year 1976 or the previous year. In addition to the false employer and wage information submitted to the State, a dependent was falsely claimed, resulting in over $500 in increased benefits.

The front side of the application, which was ordinarily prepared by a claims examiner, was dated September 10, 1976, and listed "H. Holnquist," Waukegan, Illinois, as Mrs. McCoy's last employer; a dash appeared in place of a street address. A dash was also used in place of the claimant's signature. It appeared that the name "W. Holmquist" was originally written as last employer and erased. The date of the benefit year was listed as August 29, 1976. It appeared that a different date was originally written and also erased. The claim was identified as a "new" SUA claim, and Mrs. McCoy was declared eligible. One dependent was listed, and several office codes were marked. At the bottom of the application, the erased initials "J.S.T." and the date September 10, 1976, were discernible. The initials "M.B." and the date September 13 appeared below the erasure. The reverse side of the application, which requested eligibility information from the claimant as well as her signature, was not completed.

In addition to an application, a claimant was required to submit an affidavit of wages, together with documentary verification. No affidavit from the mother could be located by the investigators; however, the computer printout, contained in the record, indicates that the affidavit represented that she earned $1,997 during the 1976 period from "H. Holnquist." Based upon the wage information submitted by the claimant, the Department's policy was to send a verification letter to the employer; if there was no response, the claimant would receive benefits. In this case, since the employer's street address was not listed, the verification letter would have been undeliverable; the misspelled employer name and incorrect initial, together with the incomplete Waukegan address, virtually guaranteed

that a verification letter would not have reached either Mabel or William Holmquist.

The dispositive question concerning the propriety of plaintiff's discharge was the extent of her participation, if any, in her mother's fraudulent claim. The Commission essentially rejected plaintiff's testimony concerning her noninvolvement in the fraud and determined that the charges had been proved. The statutory directive provides that "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct" (Ill. Rev. Stat. 1979, ch. 110, par. 274), and, as we have recently reiterated, the standard of review is whether the Commission's findings of fact are contrary to the manifest weight of the evidence and whether they provide a sufficient basis for the Commission's decision that cause for discharge does or does not exist. (*Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 409; *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 550.) Our review of the full record convinces us that the Commission's findings are not against the manifest weight of the evidence, provide sufficient cause for discharge, and must therefore be affirmed.

While there was no direct evidence indicating that plaintiff actually prepared and approved the fraudulent affidavit of wages for her mother, it is clear that the initial application for benefits contained false information and apparently intentional discrepancies. The information contained therein was necessary to process the claim and was used in part to generate the affidavit of wages and to activate the computer. The mother testified that her daughter prepared her application, a fact which could have resulted in some type of disciplinary action even if the claim had been legitimate, since there was a departmental policy which prohibited employees from processing claims for relatives. Indeed, plaintiff's supervisor testified that he re-

ceived a 29-day suspension for processing a claim for a relative who was in fact eligible for benefits.

It is apparently plaintiff's position that another employee, Marilyn Blye, whom the mother testified she had known for several years, actually completed the mother's claim. Although the State subpoenaed Marilyn Blye to testify at the discharge hearing, she did not appear. She was apparently under indictment in connection with the processing of fraudulent claims. During the initial investigation by the Department in 1977 of employees at the Waukegan office, Marilyn Blye had implicated plaintiff in the McCoy fraud. Two officers, testifying at the hearing, related that Marilyn Blye had stated that plaintiff explained to her the process by which benefits could be obtained by using a false employer and incomplete information, and that plaintiff had brought her mother's application to Marilyn Blye, who was working at the computer terminal, to process. According to the officers, it was Marilyn Blye's recollection that plaintiff had told her that her mother had not been employed as listed on the application.

Plaintiff testified at the hearing that she only partially completed the application for her mother, to whom, she said, she spoke nearly every day of her life. She did so from her personal knowledge, and, in fact, had advised her mother to apply for benefits for which she told her she was eligible. As claims manager, she did not ordinarily process applications; however, she began the process for her mother to expedite the initial stage and avoid having her mother wait in line. Plaintiff denied placing and erasing her initials at the bottom of the application, explaining that it was the claim examiner's responsibility to sign the application. She similarly denied that she declared one dependent for her mother, and she did not recall erasing the correct spelling of the name Holmquist. She admitted that she identified her mother's last employer as "H. Holnquist," whom, she stated, she knew to be her mother's employer

during the relevant time period as well as several previous years. The initial "H.", she said, referred to Helen. In fact, plaintiff testified that she, too, worked for the Holmquists during 1976, although she did not know their street address at the time she prepared the application. She indicated that she was not aware of the rule prohibiting employees from processing claims for relatives, stating that most employees had done so, including her immediate supervisor. She denied making any incriminating statements to Marilyn Blye, who, she stated, did not know her mother. She testified that she did not prepare an affidavit of wages for her mother or further participate in the process.

We are of the opinion that there is ample evidence in the record to sustain the Commission's findings without regard to Marilyn Blye's statements, which plaintiff complains were unsworn and un-cross-examined hearsay. Despite her denial, the record clearly shows that plaintiff prepared her mother's fraudulent application, and the Commission's determination that her defense that she did so innocently was not credible is not against the manifest weight of the evidence. As we have related, plaintiff's testimony was fraught with inconsistencies and, in some instances, incompatible with that of her mother. The Commission was thus fully justified in rejecting the proposition that plaintiff, "an experienced employee, could have by innocent happenstance processed a fraudulent claim for her mother." Further, plaintiff admitted identifying an employer for whom, the record shows, her mother had not worked for several years. Plaintiff's testimony that she listed "H. Holnquist," with the first name referring to Helen, and the last date employed as August 29, 1976, from her own personal knowledge is simply inexplicable as counsel conceded on oral argument.

Plaintiff argues here that the Commission acted arbitrarily in rejecting the hearing officer's finding that plaintiff's testimony was credible. The appellate court majority

had agreed, holding that the Commission's action, based only upon a review of the transcript, denied plaintiff a full and fair hearing. That holding is difficult to understand in view of this court's decision in *Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 128-29, and other cases which are virtually dispositive of this contention.

In *Homefinders, Inc.,* this court reviewed the relevant Supreme Court and other Federal decisions and stated that those "decisions have consistently recognized that, in the absence of statutory provisions to the contrary, it is not necessary that testimony in administrative proceedings be taken before the same officers who have the ultimate decision-making authority. [Citations.] *** [A]dministrative proceedings may be conducted by hearing officers who refer the case for final determination to a board which has not 'heard' the evidence in person. The requirements of due process are met if the decision-making board considers the evidence contained in the report of proceedings before the hearing officer and bases its determination thereon. [Citations.]" (65 Ill. 2d 115, 128; see also *Stojanoff v. Department of Registration & Education* (1980), 79 Ill. 2d 394, 397.) It is thus clear that where, as here, the ultimate decision-making authority regarding employee discipline more serious than a 30-day suspension is vested in the Civil Service Commission (Ill. Rev. Stat. 1979, ch. 127, pars. 63b110, 63b111), and its decision is based upon a review of the evidence presented to the hearing officer, there is no due process or statutory impediment. The Commission may appoint a hearing officer or board to conduct the hearing and investigation. The Commission's finding and decision or the approval by the Commission of the finding and decision of the hearing officer is to be rendered within 60 days after the receipt of the transcript of proceedings (Ill. Rev. Stat. 1979, ch. 127, par. 63b111), but there is no requirement, as plaintiff suggests, that the Commission rehear the evidence in order to reject its officer's findings and recom-

mendations. In an analogous context this court has consistently held that questions of fact are within the province of the Industrial Commission, which has original jurisdiction in the workmen's compensation area, and regardless of whether the Commission hears additional evidence, it is not bound to accept the findings of the arbitrator; whether or not it disagrees with the arbitrator, the Commission's findings will not be disturbed on review unless contrary to the manifest weight of the evidence. (*E.g., Zarley v. Industrial Com.* (1981), 84 Ill. 2d 380, 386, and cases cited therein; *Luby v. Industrial Com.* (1980), 82 Ill. 2d 353, 363, and cases cited therein; *Scuderi v. Industrial Com.* (1978), 73 Ill. 2d 277, 281.) As we stated earlier, the court's scope of review of an administrative agency's findings of fact regarding discharge is whether the administrative agency's findings are contrary to the manifest weight of the evidence (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 550); the Commission's findings here clearly were not, and no argument is made that these findings do not provide sufficient cause for discharge.

Plaintiff also argues, citing *Pye v. Marco* (1973), 13 Ill. App. 3d 923, that she was entitled to a hearing prior to her discharge. The statute provides:

> "No officer or employee under jurisdiction B, relating to merit and fitness, who has been appointed under the rules and after examination, shall be removed or discharged, demoted or suspended for a period of more than 30 days, except for cause, upon written charges approved by the Director of Personnel, and after an opportunity to be heard in his own defense if he makes written request to the Commission within 15 days after the serving of the written charges upon him." (Ill. Rev. Stat. 1979, ch. 127, par. 63b111.)

While we have not previously construed the above statutory requirements relating to discharged employees, in *Powell v. Jones* (1973), 56 Ill. 2d 70, the court did discuss the

various procedural protections accorded discharged and laid-off employees. *Powell* held that due process does not require a plenary prelayoff hearing with the right to counsel, witnesses, confrontation and cross-examination. Noting the qualitative differences between a discharge and a lay-off, the court considered that the laid-off employee's right to request reconsideration, request demotion, and request a Commission hearing satisfied due process standards. With respect to the applicable rules and statutes, the court stated: "While the rules [governing laid-off employees] are confusing in that they provide for reconsideration and appeal within the same 15 days, it is clear that an individual is not entitled to remain at his employment and receive compensation until his petitions are acted upon. The pattern envisaged by the statute affords the discharged employee 15 days within which to request a hearing and specifically provides, in the case of reinstatement, for reimbursement for salary lost subsequent to the effective date of the discharge. [Citations.] A laid-off employee is obviously not entitled to any greater protection." 56 Ill. 2d 70, 81.

Following *Powell,* our appellate court considered directly the question here raised and held that neither due process nor the statutory provisions of our Personnel Code prohibited removing an employee charged with misconduct or incompetence, pending a discharge hearing. (*Haverly v. Boys* (1979), 77 Ill. App. 3d 312; accord *Lee v. Illinois Racing Board Laboratory* (1980), 87 Ill. App. 3d 667; see also *Hoban v. Rochford* (1979), 73 Ill. App. 3d 671; *People ex rel. Cotter v. Conlisk* (1974), 17 Ill. App. 3d 346; *McReynolds v. Civil Service Com.* (1974), 18 Ill. App. 3d 1062.) We agree. As the *Haverly* court recognized, the Supreme Court, in *Arnett v. Kennedy* (1974), 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633, rejected the proposition that due process required that nonprobationary Federal employees discharged for cause be accorded an evidentiary hear-

ing *before* removal. In a concurring opinion, Justice Powell noted that resolution of the due process question depended on balancing the government's interest in expeditious removal of an unsatisfactory employee against the interest of the employee in continued public employment. Since the employee was entitled to reinstatement and backpay if, following the later evidentiary hearing, he prevailed on the merits, his actual injury was limited to a temporary interruption of income. In contrast, "[p]rolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency. Moreover, a requirement of a prior evidentiary hearing would impose additional administrative costs, create delay, and deter warranted discharges. Thus, the Government's interest in being able to act expeditiously to remove an unsatisfactory employee is substantial." 416 U.S. 134, 168, 40 L. Ed. 2d 15, 41, 94 S. Ct. 1633, 1651 (Powell, J., concurring in part).

Our statute provides for notice, written charges, a plenary hearing with counsel as a matter of right, and reinstatement and full compensation for an employee who was suspended, discharged or improperly laid off. (Ill. Rev. Stat. 1979, ch. 127, pars. 63b111, 63b111b.) We agree with the appellate court that the statutory provisions evince a "legislative intent and authority for separating from the work force an employee charged with misconduct or incompetence, with the understanding that he be granted full compensation and benefits that he would have earned during the suspension and discharge period should he be reinstated" (*Haverly v. Boys* (1979), 77 Ill. App. 3d 312, 318-19), and that the time limitations insure the suspended or discharged employee a speedy adjudication of the disciplinary charges.

Plaintiff's final argument that the Commission's decision is void because the amended charges were not ap-

proved by the Director of the Department of Personnel is without merit. Plaintiff was served with approved written charges which detailed the extent of her alleged wrongdoing. She declined the opportunity for a continuance when notified of the State's intention to amend by changing only slightly the language contained in the notice of charges, and did not object for the reason now advanced. The modification was insubstantial, and it is apparent that plaintiff suffered no prejudice therefrom.

For the reasons stated, the appellate court's judgment is reversed; the circuit court's judgment affirming the Commission's discharge order is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*