BRENDA FLEX, Plaintiff-Appellee, *v.* THE DEPARTMENT OF LABOR, BOARD OF REVIEW, *et al.*, Defendants-Appellants.

First District (1st Division)    No. 83—1391

Opinion filed June 25, 1984.

Neil F. Hartigan, Attorney General, of Springfield (Georgene M. Wilson, Assistant Attorney General, of counsel), for appellants.

Patricia L. Winfrey and Jeffrey B. Gilbert, both of Legal Assistance Foundation, of Chicago, for appellee.

JUSTICE McGLOON delivered the opinion of the court:

Plaintiff, Brenda Flex, brought an action in the circuit court of Cook County under the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*), seeking review of a decision of the Illinois Department of Labor, Board of Review (Board). The Board had found, pursuant to section 601(A) of the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1983, ch. 48, par. 431(A)), that plaintiff

was ineligible for unemployment insurance benefits because she voluntarily left her job without good cause attributable to the employer. The circuit court reversed the decision of the Board, and the Board has appealed, contending that its decision was supported by the manifest weight of the evidence.

Plaintiff was employed as a stenographer by Metropolitan Life Insurance Company (employer) from July 10, 1978, until July 20, 1981, when she was placed on a maternity leave of absence which was to extend through September of 1981. During that time she gave birth to a son whose spinal cord was damaged, and she was granted an extended leave until January 15, 1982, because of the child's condition.

On January 15, 1982, plaintiff had a telephone conversation with her supervisor, Kenneth Mahler, who informed her that if she did not return to work on the following Monday, he would have to hire someone else. Plaintiff's response to Mahler is one of the major points of dispute between the parties. She claimed that she told him she intended to return to work but needed a little more time off because the caretaker for her injured child was out of town and she was unable to secure a substitute. The employer, on the other hand, maintained that plaintiff informed Mahler that she did not intend to return to work. The employer opposed her claim for unemployment insurance benefits, and plaintiff submitted a claimant-information sheet stating that she could not return to work on the appointed date because her baby was ill. The claims adjudicator made a factual finding that plaintiff could not return to work due to the illness of her baby, but determined that she was ineligible for benefits pursuant to section 601(A) of the Act because she had "left work voluntarily without good cause attributable to the employing unit ***." (Ill. Rev. Stat. 1983, ch. 48, par. 431(A).) Plaintiff filed an application for reconsideration of the claims adjudicator's determination in which she stated that she had requested an extension of her maternity leave until she could find someone who was competent to care for her injured child. The application was unsuccessful and plaintiff appealed.

An administrative hearing was conducted at which plaintiff appeared *pro se*. The employer was represented by hearing representative Christine Gilden and office supervisor Robert Main. Plaintiff testified that in her conversation with Kenneth Mahler, she requested an extension of her leave to enable her to find someone to care for her injured child, because her regular baby sitter was out of town. Although Mahler was not present at the hearing, Robert Main testified that Mahler told him that plaintiff said she did not intend to return to work. The hearing examiner affirmed the denial of benefits.

Still proceeding *pro se,* plaintiff appealed to the Board. She presented the Board with a letter from her son's pediatrician, Dr. Paula K. Jaudes, which stated that the child suffered a spinal cord injury at birth, that he suffers from a right Erb's palsy, spinal cord lesion and hypospadias and that he needs physical therapy and infant stimulation. In addition, Dr. Jaudes advised that: "[I]t is important that his mother spend as much time with [the child] as possible. She is a very good mother and [the child] shows the results of her time." The Board subsequently affirmed the denial of benefits pursuant to section 601(A) of the Act. It also made an additional finding of fact that "the claimant did not contact the employer to request a further extension of her maternity leave, nor to inform the employer that she was not able to return to work upon expiration of her leave."

Plaintiff thereafter retained counsel and filed a complaint in the circuit court for administrative review of the Board's determination. The circuit court reversed the determination based in part on its finding that the Board erroneously failed to apply an exception contained in section 601(B)(1) of the Act. Although section 601(A) provides that a person is ineligible for benefits if he voluntarily leaves his job without good cause attributable to the employer, section 601(B)(1) provides that:

> "The provisions of this Section shall not apply to an individual who has left work voluntarily:
>
> 1. *** [U]pon the advice of a licensed and practicing physician that assistance is necessary for the purpose of caring for his *** child *** who is in poor physical health and such assistance will not allow him to perform the usual and customary duties of his employment, and he has notified the employing unit of the reasons for his absence." (Ill. Rev. Stat. 1983, ch. 48, par. 431 (B)(1).)

The court further held that the Board's finding that plaintiff failed to request an extension of her maternity leave was based solely upon hearsay evidence and therefore against the manifest weight of the evidence.

On appeal, the Board contends that the circuit court erred in two respects; first in construing section 601(B)(1) of the Act in such manner as to render it applicable to the instant cause, and second, in holding that its factual finding concerning plaintiff's request for an extended leave was against the manifest weight of the evidence.

The findings and conclusions of an administrative agency on questions of fact are considered to be *prima facie* true and correct. (*Dunaway v. Department of Labor* (1982), 109 Ill. App. 3d 63, 440

N.E.2d 231.) However, a reviewing court is not bound to give the same deference to an agency's conclusions of law, such as its construction of a statute, as it gives to its finding of facts. "While we might affirm a factual conclusion as not against the manifest weight of the evidence although we would have reached the opposite conclusion, we cannot let stand a decision based upon an erroneous construction of a statute." *Dunaway v. Department of Labor*, 109 Ill. App. 3d 63, 68, 440 N.E.2d 231.

The first argument advanced by the Board is that plaintiff failed to qualify for the section 601(B)(1) exception because the letter from Dr. Jaudes did not specifically state that caring for her disabled child made it impossible for her to continue her employment. As noted above, the statute provides that to qualify for the exception a claimant must show that he left work "upon the advice of a licensed and practicing physician that assistance is necessary for the purpose of caring for his *** child *** who is in poor physical health and such assistance will not allow him to perform the usual and customary duties of his employment, and he has notified the employing unit of the reasons for his absence." (Ill. Rev. Stat. 1983, ch. 48, par. 431(B)(1).) The Board construes this provision to require the physician to state not only that the ill child needs his parent's assistance, but also that such assistance will prevent the parent from performing the customary duties of his job. It argues that although Dr. Jaudes' letter meets the first requirement, her statement that "it is important that his mother spend as much time *** as possible" with the child is insufficient to show that she cannot continue working.

■ Plaintiff, on the other hand, urges a different construction of the statute. She maintains that the proper reading of section 601(B)(1) is that the physician must state only that assistance is necessary to care for the ill child and that, independent of the physician's statement, the assistance must be such as to preclude the claimant from performing the duties of his job. We agree with plaintiff's interpretation. It is well established that Illinois courts have required that the Act be liberally interpreted to favor the awarding of benefits. (*Griffitts Construction Co. v. Department of Labor* (1979), 76 Ill. 2d 99, 390 N.E.2d 333.) Although a physician is an expert on the type of assistance necessary to care for an ill child, his opinion on how such assistance will affect the parent's job duties is wholly outside his area of expertise and should not be required as a predicate for the award of benefits.

Moreover, even were we to accept the Board's interpretation we believe that Dr. Jaudes' letter is sufficient to meet that interpretation.

Since a physician cannot be expected to know the implications of his advice for the receipt of unemployment insurance, it is unreasonable to require that he employ the exact wording of the statute. Dr. Jaudes' letter clearly indicates that plaintiff's child suffered severe and disabling injuries at birth. We believe that the circuit court could properly interpret her advice that plaintiff spend as much time as possible with him as precluding the continuation of full-time employment.

■■ The second argument raised by the Board is that the court erred in holding that its finding that plaintiff failed to request an extension of maternity leave was against the manifest weight of the evidence. As previously noted, section 601(B)(1) requires that the claimant notify the employer of the reason for his absence. The court concluded that the finding was based entirely on hearsay evidence which was insufficient to controvert plaintiff's sworn testimony.

Hearsay which is not admissible in a jury trial may be sufficient to support the finding of an administrative agency if more reliable evidence is not available, "and if in the end the finding is supported by the kind of evidence on which responsible persons are accustomed to rely in serious affairs." (*Starkey v. Illinois Civil Service Com.* (1982), 105 Ill. App. 3d 904, 910, 435 N.E.2d 176, *rev'd on other grounds* (1983), 97 Ill. 2d 91, 454 N.E.2d 265.) In examining the record, a reviewing court will look at all of the evidence in opposition to the challenged finding as well as the evidence which tends to support it. *Starkey v. Illinois Civil Service Com.* (1982), 105 Ill. App. 3d 904, 910, 435 N.E.2d 176, *rev'd on other grounds* (1983), 97 Ill. 2d 91, 454 N.E.2d 265.

In the case at bar, plaintiff testified under oath that she informed Kenneth Mahler by telephone on January 15, 1982, that she needed additional time off to arrange for child care. Mahler was not present at the proceeding, and the only evidence introduced by the employer was the testimony of Robert Main that Mahler told him that plaintiff said she did not intend to return to work. We believe that the circuit court correctly ruled that the agency could not credit Main's hearsay testimony concerning a conversation to which he was not a party over plaintiff's contrary competent testimony.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

GOLDBERG and CAMPBELL, JJ., concur.