GERALD ZBIEGIEN, Plaintiff-Appellee, v. THE DEPARTMENT OF LA-
BOR *et al.*, Defendants-Appellants.

First District (5th Division)   No. 86—1835

Opinion filed May 29, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Diane M. Curry, Assistant Attorney General, of Chicago, of counsel), for appellants.

No brief filed for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Gerald Zbiegien, brought an administrative review action in the circuit court of Cook County (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*) seeking review of a decision of the Illinois Department of Labor, Board of Review (Board). The Board had found that under section 601(A) of the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 431(A)), plaintiff voluntarily left work without good cause attributable to the employer and thus was ineligible for unemployment insurance benefits. The circuit court reversed the Board's decision, and the Board appeals, contending that its decision was not against the manifest weight of the evidence. Although plaintiff has not submitted a brief, we elect to reach the merits of this case

under the principles enunciated in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

Plaintiff had been employed by the House of Stainless for nearly 15 years and was working as an assistant machine operator when he resigned from his job on June 14, 1985, without giving his employer any notice. He applied for unemployment benefits, stating that it was necessary for him to quit work because of the changes there and because of a visual problem. On July 8, 1985, a claims adjudicator determined that plaintiff was eligible for benefits because he left his job after it became dangerous when his duties were changed. The adjudicator found that plaintiff's reason for leaving was attributable to the employer, plaintiff left for good cause, and he was not ineligible for benefits under section 601(A) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 431(A)).

The employer appealed the claims adjudicator's decision, and a hearing was held before a referee on August 6, 1985. During this hearing, plaintiff testified that he left the job because he had "been doing the same job and it has been harder to do, gradually" as the result of the deteriorating condition of his eyesight. He said that at the time he left, the company was in the process of changing and moving to another plant and that he would have been assigned to different work which would have been more dangerous in the next few weeks. At a meeting of the entire warehouse staff in early June 1985, he was informed by his supervisor, Mr. Nashioka, that he would be doing different work, but he was not told what his new duties would be. Plaintiff, however, believed that it would be unsafe for him to stay. He said that he had no definite job prospects when he left, but when he resigned he told his supervisor that he had some possibilities of a new job and that it had become too difficult for him to work there. Plaintiff believed that the company knew of his eye problem because he had told a foreman about it "a long time ago," but that supervisor had subsequently been discharged.

A letter from plaintiff's ophthalmologist, Dr. Rajas, was submitted at the hearing, and it stated that plaintiff had been under the doctor's care for myopia of both eyes since 1978. The doctor also stated:

> "This patient can perform any work where there is no undue risk of eye injury nor the need for simultaneous binocular vision."

Mr. Nashioka, plaintiff's supervisor, testified at the same hearing on behalf of the employer. He stated that he had been working for the employer for four months at the time plaintiff quit, but he said that to his knowledge, plaintiff's job duties had not changed. If they had

changed, Nashioka would have assigned him different duties. The warehouse meeting referred to by plaintiff in his testimony was held by the company's vice-president to inform the employees of the company's financial situation and to let them know that in the future certain employees would have to learn to be back-up operators of some machines, but plaintiff was not singled out. Plaintiff told Nashioka of his resignation on the day he quit and did not give any notice. Nashioka believed that plaintiff quit because of the company's financial situation.

The referee set aside the decision of the claims adjudicator and concluded that plaintiff quit his job without good cause attributable to his employer and was therefore ineligible for benefits under section 601(A) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 431(A)). She also found that plaintiff quit his job based upon rumors that it would change in the future, although he had not been told that it would be changed nor had he received any information on when it would be changed. Plaintiff then appealed to the Board, which affirmed the referee's decision, stating that plaintiff quit his job in anticipation that his duties would change even though his work assignment had not been altered, and he had not been advised by a physician to leave work nor threatened with discharge.

Plaintiff subsequently filed a complaint for administrative review, and a hearing was held in the circuit court of Cook County in which the court questioned plaintiff, who related that his job duties had changed and that he had to do more climbing and searching for material. This change in work routine resulted in his cutting himself and dropping material on his feet. Plaintiff indicated that he felt that the job was unsafe for him, and his ophthalmologist told him to continue to work as long as he could but advised him to use his judgment. Plaintiff said he spoke to some people with the company about his problems but that they would not listen to him. After hearing plaintiff's statements, the trial court reversed the decision of the Board because it was against the manifest weight of the evidence, concluding that changes in plaintiff's work duties endangered his eyesight and made it unsafe for him to continue working. It is from this decision that the Board appeals.

■■ We agree with the Board's contention that the circuit court erred in considering new evidence presented by plaintiff at the administrative review hearing. Section 3—110 of the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—110) provides that on administrative review, "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the

administrative agency shall be heard by the court." Alternatively, the court may remand the cause to the administrative agency for the taking of additional evidence pursuant to the standards set out in section 3—111(7) of the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—111(7)). But the circuit court itself may not entertain additional evidence or conduct a hearing *de novo*. (*Popoff v. Department of Labor* (1986), 144 Ill. App. 3d 575, 494 N.E.2d 1266.) In the case at bar, the circuit court could not properly consider any new evidence on the issue of how plaintiff's job changed and it erred in doing so in this case. This was not harmless error. (See *Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 477 N.E.2d 1351.) However, this does not end our consideration of the matter.

██ The court's function in an unemployment insurance case is limited to determining whether the Board's findings at the administrative level are against the manifest weight of the evidence. (*Popoff v. Department of Labor* (1986), 144 Ill. App. 3d 575, 494 N.E.2d 1266.) An agency's findings concerning factual questions are *prima facie* true and correct, and the court may not reweigh the evidence adduced at the hearing or substitute its judgment for that of the agency unless the Board's findings are without substantial support in the record. (*Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 477 N.E.2d 1351.) However, a reviewing court is not bound to give the same deference to an agency's conclusions of law as it gives to its findings of fact and cannot let stand a decision based upon an erroneous construction of a statute. (*Flex v. Department of Labor, Board of Review* (1984), 125 Ill. App. 3d 1021, 466 N.E.2d 1050.) In the case at bar the Board contends that its decision that plaintiff was not entitled to unemployment insurance benefits was not against the manifest weight of the evidence and that the circuit court erred in finding that it was.

██ In order to obtain unemployment insurance benefits, the claimant bears the burden of establishing eligibility. (*Hamilton v. Board of Review* (1985), 136 Ill. App. 3d 50, 482 N.E.2d 1126.) A claimant is ineligible for benefits if "he has left work voluntarily without good cause attributable to the [employer]." (Ill. Rev. Stat. 1985, ch. 48, par. 431(A).) That provision is subject to an exception under section 601(B) of the Act, which provides that an individual who has voluntarily left his employment is entitled to benefits if he "is deemed physically unable to perform his work by a licensed and practicing physician *** and he has notified the [employer] of the reasons for his absence." (Ill. Rev. Stat. 1985, ch. 48, par. 431(B).) At the administrative hearing plaintiff introduced a letter from his physician which

specified that he was unable to do certain kinds of work. He also testified that he told his superiors of his physical problems. Nonetheless, neither the Board nor the circuit court made any findings regarding the applicability of section 601(B) of the Act which might except plaintiff from ineligibility. The Board now contends in its brief that the section 601(B) exceptions to section 601(A) do not apply in this case without giving any reasons for this conclusion.

▮▮ ▮ Although the Act is to be liberally interpreted to favor the awarding of benefits (*Flex v. Department of Labor, Board of Review* (1984), 125 Ill. App. 3d 1021, 466 N.E.2d 1050), we find that plaintiff failed to meet his burden of establishing eligibility under section 601(B) of the Act. His ophthalmologist's report indicated only that he could perform any work which did not unduly risk eye injury or require "simultaneous binocular vision." A physician is not required to use the exact wording of the statute (*Flex v. Department of Labor, Board of Review* (1984), 125 Ill. App. 3d 1021, 466 N.E.2d 1050) and the doctor's advice is subject to interpretation in the context of whether a plaintiff is entitled to unemployment benefits (*Dubinin v. Ward* (1985), 137 Ill. App. 3d 281, 484 N.E.2d 870). However, not every statement by a physician, no matter how ambiguous or equivocal, will satisfy statutory requirements. (*Dubinin v. Ward* (1985), 137 Ill. App. 3d 281, 484 N.E.2d 870.) The statements of plaintiff's physician in this case certainly did not satisfy the requirement of section 601(B) of the Act that in order for a claimant to receive benefits after voluntarily leaving work, he must be "deemed physically unable to perform his work by a *** physician," and plaintiff is therefore not eligible to receive unemployment benefits under this section of the Act. Ill. Rev. Stat. 1985, ch. 48, par. 431(B).

▮▮ ▮ Nonetheless, plaintiff would be eligible under section 601(A) of the Act if he had voluntarily quit his job for good cause which was attributable to his employer. Good cause may result from a substantial, unilateral change in the employment which renders a job unsuitable (*Davis v. Board of Review* (1984), 125 Ill. App. 3d 67, 465 N.E.2d 576) and may consist of a reasonable subjective fear concerning an employee's health, even absent the advice of a physician (*Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 477 N.E.2d 1351). For a claimant to demonstrate that a health concern is a justifiable reason for terminating employment, the claimant must "(1) offer competent testimony that adequate health reasons existed to justify termination at the time of termination; (2) have informed the employer of the health problem[;] and (3) be available, where reasonable accomodation [*sic*] is made by the employer, for work which is not in-

imical to his health." (*Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 1101-02, 477 N.E.2d 1351, 1357, quoting *Dornblum v. Commonwealth, Unemployment Compensation Board of Review* (1983), 77 Pa. Commw. 547, 549, 466 A.2d 747, 749.) In the case at bar, the Board found that plaintiff did not show good cause to voluntarily leave his employment, while the circuit court found that changes in plaintiff's job which endangered his health constituted good cause for him to terminate his employment.

We conclude that plaintiff failed to prove that he had good cause attributable to his employer to voluntarily leave his job and therefore we find that the Board's decision that plaintiff was not entitled to benefits under section 601(A) of the Act was not against the manifest weight of the evidence. At the hearing before the referee, plaintiff did not present any evidence that his job had changed at the time he left. He testified only to future changes in job duties. He also failed to present sufficient evidence that a health concern was a justifiable reason to terminate his employment. The letter from his doctor contained only vague instructions on work plaintiff was to avoid, and plaintiff did not offer any testimony of specific problems at work caused by his poor eyesight at the time he terminated his employment. The only company official who knew of plaintiff's problems with his eyesight had been discharged, and plaintiff's supervisor testified that he thought plaintiff resigned because of the company's financial situation. The employer thus had no opportunity to accommodate plaintiff's visual problem. The Board's decision was correct.

Accordingly, the judgment of the circuit court of Cook County is reversed.

Reversed.

SULLIVAN, P.J., and MURRAY, J., concur.