ALBERT NICHOLS, Plaintiff-Appellant, v. THE DEPARTMENT OF EM-PLOYMENT SECURITY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—90—0094

Opinion filed August 22, 1991.

Legal Assistance Foundation of Chicago, of Chicago (James A. Latturner, Julian Henriques, Jr., and Theodora M. Rand, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff Albert Nichols (Nichols) appeals from the order of the circuit court affirming the decision of the Board of Review (the Board) of the Illinois Department of Employment Security (the Department) that he is ineligible for unemployment insurance benefits because he was discharged for misconduct connected with his work. Plaintiff contends that the circuit court's ruling was erroneous as a matter of law and contrary to the manifest weight of the evidence.

The facts of record are as follows. Plaintiff had been employed intermittently as a janitor at the Hilliard Center, a property of the Chicago Housing Authority (CHA), between 1968 and 1980, from which time he worked continuously until his discharge in October 1988. On August 29, 1988, the CHA sent a "final disciplinary notice" to plaintiff advising him that his termination from CHA employment was being sought because (1) his conduct did not conform to CHA policies and practices and (2) his work performance was unsatisfactory. Specifically, the notice stated that on August 20, 1988, plaintiff had refused a direct assignment from his immediate supervisor to mow the grass, following which plaintiff left work for the day. In addition, it was noted that since June 1988, when a 60-day probation for excessive absenteeism ended, he had been absent from work a total of 35 hours for sick leave and 10½ hours without pay in addition to 16 hours' annual leave time. The disciplinary notice further advised plaintiff that because of his refusal to perform an assigned task and because he had ignored repeated warnings regarding his abuse of leave privileges, he was suspended effective August 29, 1988, pending termination proceedings.

A pretermination meeting was held on September 12, 1988. In attendance were plaintiff, maintenance supervisor Harry Green, the assistant manager of the Hilliard Center, and three union representatives. Regarding the events of August 20, Green stated that when he arrived at work at 8 a.m., he asked Sylvester Johnson, a maintenance employee who acted as a weekend supervisor, if everyone was present for work. Johnson stated that he had assigned plaintiff to help him cut the grass but plaintiff had refused and left the CHA premises. Green and plaintiff had a conversation approximately 30 minutes later in which plaintiff acknowledged that he refused to cut the grass and had not signed in for work. Green noted that in late June 1988 he removed plaintiff from a 60-day probation and that he had repeatedly warned

plaintiff, both verbally and in writing, about his poor attendance and performance. Green explained that because of plaintiff's poor attendance record and his refusal to follow his supervisor's directive, he believed that suspending plaintiff pending termination was appropriate.

Johnson stated that he had been told by the building manager that the grass was to be cut that day. He assigned plaintiff to first mop the stairwells in one of the buildings and then to assist him in cutting the grass. Plaintiff told him that Green had not assigned him to cut grass that year and that he would not cut the grass. Johnson advised plaintiff that if he refused, he may as well not work that day, whereupon plaintiff left.

Plaintiff did not dispute Johnson's statement, but maintained that the reason Green had not assigned him to grass cutting was because Green knew he had had a prior accident with the lawnmower. Green denied that that was the reason for not assigning plaintiff to cut grass. He stated that there were other people who cut the grass better and, so, he usually assigned those people to do it.

A memorandum from the acting manager of labor relations regarding the termination recommendation contained a list of plaintiff's work history. Between 1980 and 1988, the CHA disciplined plaintiff 11 times for poor attendance, tardiness, and poor work performance. The memorandum stated that despite the imposition of progressive disciplinary measures short of termination, plaintiff had failed to modify his behavior. Termination based on insubordination and a poor work record was recommended.

Green's recommendation to terminate plaintiff's employment was upheld, and plaintiff was subsequently notified that he was discharged for insubordination and excessive absenteeism. Plaintiff then submitted an application for unemployment insurance benefits. Thereafter he and Green both gave statements to the Department regarding the reasons for his discharge. The statements were essentially the same as their statements at the pretermination meeting. The claims adjudicator found that plaintiff was discharged for misconduct connected with his work and denied plaintiff's claim for benefits on that ground. Plaintiff sought reconsideration of the determination, asserting that he had injured his back at work on four occasions. He alleged that the CHA was aware of his injuries and was firing him because he had sued the CHA twice. The denial of his claim was reversed; but, after further reconsideration, the original determination denying his claim was affirmed. The claims adjudicator noted that although plaintiff maintained that he refused to cut the grass for reasons relating to his health, he had pro-

duced no medical evidence in support of his assertion that he was physically unable to cut the grass.

Following the denial of his claim, plaintiff appealed, *pro se,* and a hearing was held before a referee. Plaintiff testified that prior to signing in for work on August 20, he made some joking remarks to Johnson which "rubbed him the wrong way" and resulted in an argument. Plaintiff claimed that he was unable to cut grass because of the injuries to his back and ankle from pushing the mower out onto the lawn and pushing heavy containers of garbage. He stated that he believed that it was his joking or "jiving" that prompted Johnson to "get back at him" by directing him to assist in mowing the grass.

Johnson denied that the joking between him and plaintiff got out of hand, stating that it was something they did every morning. He knew that plaintiff had been off from work due to an injury, but he did not know the nature of it, nor did he know of any physical problems which would prevent plaintiff from cutting grass. Jackson described the lawn mower as a multipurpose vehicle which was convertible into a snow blower or compactor. The vehicle is motor driven and does not require much physical exertion to run.

There was no dispute at the hearing that plaintiff submitted to the CHA a written release prepared by Dr. Kocalis, the physician for the union and plaintiff's attending physician, on August 4, 1988. The release stated that plaintiff was physically able to return to work on August 9, 1988. Dr. Kocalis placed no restrictions on his activities but plaintiff testified that both Dr. Kocalis and Dr. Javlin, the CHA physician, verbally told him that he should perform only light duties. Plaintiff testified that neither the release prepared by Dr. Kocalis nor any other doctor's statement mentioned light duty because there is no such thing as light duty in his job. He knew that when he returned to work, he would be required to perform the jobs he had performed prior to his medical leave, such as mopping, sweeping and garbage removal, but he did not expect to cut grass because he had not been assigned that task all year.

In his testimony, plaintiff referred to another doctor he had consulted regarding his back injury. He did not provide the physician's name and did not have a copy of any records from him, but he was "pretty sure" that this unidentified doctor had given him a letter restricting him to light duty. He stated that the original injury to his back occurred in 1982, that he had seen several doctors since that time and had given copies of all his medical records since 1980 to Green. He acknowledged, however, that the August 4 release from Dr. Kocalis was the only doctor's statement he received since January 1988 when

he returned to work after a prior medical leave. He also testified that Dr. Javlin told him that he (Javlin) would not give plaintiff copies of his medical records unless he hired an attorney.

Ms. Kraly, a hearings representative of the CHA, testified that the only statement in the CHA's possession relating to plaintiff's ability to return to work in August 1988 was the full release from Dr. Kocalis. Plaintiff alleged that Ms. Kraly's statement was "a lie."

The referee noted that Green would be the person who had all of plaintiff's records and suggested that the hearing be continued to have Green "clear this up." Kraly advised the referee that she did not know when Green was scheduled to return to work and would call the CHA to obtain that information. Plaintiff, however, interjected that Green never took more than one week of vacation at a time and would be back on the following Monday.

When the hearing resumed and Green did not appear, the referee stated that his decision would be written on the evidence of record. The referee found that the release issued by Dr. Kocalis contained no restrictions, and that no other documents were presented supporting plaintiff's contrary assertion that he was unable to cut grass because of a back injury. The referee therefore affirmed the decision of the claims adjudicator, holding that plaintiff was discharged for misconduct connected with his work, and that he was not eligible for unemployment insurance benefits.

Plaintiff filed a *pro se* appeal to the Board which adopted the referee's findings of fact and affirmed his decision. Plaintiff thereafter filed a complaint, *pro se*, in the circuit court for administrative review of the Board's determination. A hearing was held on August 28, 1989. The court reviewed the findings and decision of the referee and the decision of the Board, and heard arguments by the parties. Plaintiff maintained that he had given Green a copy of a physician's statement restricting him to light duty, but that Green had "held it back." When asked by the court if he could have obtained another copy, plaintiff responded that he "could have" "[b]ut didn't think it was necessary." The court stated that it had reviewed the entire record, including the evidence that plaintiff had been disciplined numerous times, and affirmed the decision of the Board that plaintiff was ineligible for unemployment insurance benefits. Plaintiff thereafter retained counsel who filed a motion to vacate the August 28 order. After arguments by counsel, the court denied plaintiff's motion, holding that there was no error on which to base vacatur of its earlier ruling. This appeal followed.

■ The purpose of the Unemployment Insurance Act (Ill. Rev. Stat. 1989, ch. 48, par. 300 *et seq.*) (the Act) is to provide monetary benefits to unemployed workers to alleviate the hardships of involuntary unemployment. (*Siler v. Department of Employment Security* (1989), 192 Ill. App. 3d 971, 549 N.E.2d 760.) The receipt of unemployment insurance benefits in Illinois is a conditional right (*Clark v. Board of Review of the Illinois Department of Labor* (1984), 126 Ill. App. 3d 559, 467 N.E.2d 950), and the claimant has the burden of proving entitlement to such benefits (*Clark*, 126 Ill. App. 3d 559, 467 N.E.2d 950; *Siler*, 192 Ill. App. 3d 971, 549 N.E.2d 760). The Act is to be liberally construed for the benefit of unemployed individuals (*Popoff v. Department of Labor* (1986), 144 Ill. App. 3d 575, 494 N.E.2d 1266; *Flex v. Department of Labor, Board of Review* (1984), 125 Ill. App. 3d 1021, 466 N.E.2d 1050). However, the Act is not intended to benefit those who are unemployed on account of their own misdeeds. *Siler*, 192 Ill. App. 3d 971, 549 N.E.2d 760; *Popoff*, 144 Ill. App. 3d 575, 494 N.E.2d 1266; *Bochenek v. Department of Employment Security* (1988), 169 Ill. App. 3d 507, 525 N.E.2d 893.

It is the responsibility of the administrative agency to weigh the evidence, determine the credibility of witnesses and resolve conflicts in testimony. (*Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 475 N.E.2d 879.) Under the Code of Civil Procedure, the agency's factual findings and conclusions are considered *prima facie* true and correct (Ill. Rev. Stat. 1989, ch. 110, par. 3—110; *Wilson v. Department of Employment Security* (1990), 196 Ill. App. 3d 711, 554 N.E.2d 1006; *Bochenek v. Department of Employment Security* (1988), 169 Ill. App. 3d 507, 525 N.E.2d 893), and must be upheld on review unless they are contrary to the manifest weight of the evidence (*Ferretti v. Department of Labor* (1987), 115 Ill. 2d 347, 500 N.E.2d 560). Thus, a reviewing court cannot reweigh the evidence, judge the credibility of witnesses or resolve conflicts in testimony. The function of the court regarding factual issues is limited solely to determining whether the agency's decision is against the manifest weight of the evidence. (*Jackson* 105 Ill. 2d 501, 475 N.E.2d 879; *Siler v. Department of Employment Security* (1989), 192 Ill. App. 3d 971, 549 N.E.2d 760; *Dotson v. Bowling* (1981), 102 Ill. App. 3d 340, 430 N.E.2d 44.) The mere existence of conflicting testimony is not a sufficient basis on which to reverse. *Finik v. Department of Employment Security* (1988), 171 Ill. App. 3d 125, 524 N.E.2d 1148.

■ However, a reviewing court is not bound to give the same deference to an agency's conclusions of law as it must give to its findings of fact, and will reverse a decision based on an erroneous interpreta-

tion or application of the law. *London v. Department of Employment Security* (1988), 177 Ill. App. 3d 276, 532 N.E.2d 294; *Zbiegien v. Department of Labor* (1987), 156 Ill. App. 3d 395, 510 N.E.2d 422; *Gee v. Board of Review of the Department of Labor* (1985), 136 Ill. App. 3d 889, 483 N.E.2d 1025.

■ Under section 602(A) of the Act, an individual is not eligible for benefits if he was discharged for misconduct connected with his work. (Ill. Rev. Stat. 1989, ch. 48, par. 432(A).) Misconduct is defined in section 602(A) as follows:

> "For purposes of this subsection, the term 'misconduct' means the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." Ill. Rev. Stat. 1989, ch. 48, par. 432(A).

Plaintiff contends generally that the Board's decision that he was discharged for misconduct connected with his work was erroneous as a matter of law. Plaintiff asserts that the Board improperly failed to consider whether cutting grass was one of his job duties. He argues that an employer's directive to an employee to perform a task which is outside the scope of his job duties is not, as a matter of law, "reasonable," within the meaning of the Act. He contends then that his refusal to do the work does not constitute misconduct under section 602(A) of the Act, which requires disobedience of a "known and reasonable rule." Plaintiff bases his argument on his testimony that he had not been assigned to cut the grass all year and Johnson's testimony that cutting grass "hadn't been" one of plaintiff's duties.

■ We are not persuaded by this argument. The fact that plaintiff had not been personally assigned to cut the grass that season does not mean that grass cutting was not one of the duties within the scope of his job as a maintenance worker. Plaintiff's own testimony established that cutting grass and removing garbage with the tractor were part of his job duties for several years. Also, Johnson, a fellow maintenance employee who was acting as supervisor only on weekends, testified that grass cutting was one of the routine maintenance duties. In fact, despite being the supervisor on the day in question, Johnson testified that he was responsible for the grass being cut that day and had merely directed plaintiff to assist him. In a written statement to the Department regarding plaintiff's application for insurance benefits and at the pretermination meeting, Green denied that his reason for not

having assigned grass cutting duty to plaintiff in the recent past was because of any injury plaintiff had suffered. Rather, he explained, it was because other people did a better job, and so he usually assigned the task to them.

Further, numerous documents in the record make clear that plaintiff's discharge was not based solely on his refusal to cut the grass on August 20. These documents expressly state that plaintiff's discharge was also based on his long history of poor work performance and excessive absenteeism. The incident which culminated in plaintiff's discharge occurred less than two months after a 60-day probation for poor attendance had ended. On his last working day plaintiff did not work because he refused to cut grass. Plaintiff does not and cannot validly argue that rules prohibiting excessive absenteeism and tardiness are not reasonable under the Act. See, *e.g.*, *Wilson v. Department of Employment Security* (1990), 196 Ill. App. 3d 711, 554 N.E.2d 1006; *Bochenek v. Department of Employment Security* (1988), 169 Ill. App. 3d 507, 525 N.E.2d 892; *Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 465 N.E.2d 1052.

In its written decision, the Board expressly stated that it had reviewed the entire record, including the records of the Division of Unemployment Insurance, as did the circuit court in affirming the Board's decision. Thus, there is no basis for plaintiff's contention that the Board failed to consider whether plaintiff had disobeyed a reasonable rule or that its decision that he had been discharged for misconduct was contrary to the manifest weight of the evidence.

Plaintiff also asserts that the Board erred in basing its denial of his claim on the ground that he did not produce a physician's statement substantiating his claim that his physical condition justified his refusal to cut the grass. Plaintiff first argues that the Act is intended to provide benefits to persons discharged for incapacity or inability to perform his job duties (*Siler v. Department of Employment Security* (1989), 192 Ill. App. 3d 971, 549 N.E.2d 760). He maintains that the uncontradicted testimony established that the CHA knew he suffered injuries which prevented him from cutting grass, and that Johnson's directive that he do so was not, therefore, reasonable.

■ Plaintiff misstates the evidence. Although it is true that the CHA did not dispute that plaintiff had suffered an injury, it vigorously contested plaintiff's claim that the injury prevented him from cutting grass. As noted above, Johnson testified that he knew plaintiff had taken time off from work because of an injury, he did not know the nature of it nor was he ever told that there were jobs that plaintiff was physically unable to perform. Green also disputed plaintiff's claim that

he, Green, knew plaintiff was physically unable to cut grass and, for that reason, had not assigned the task to plaintiff. Most important, however, was that the union physician's release form stated, without qualification, that plaintiff was physically able to return to work. We are not persuaded by plaintiff's argument that the form of physician's release did not provide the physician the ability to specify whether the employee being returned to work should refrain from performing certain types of work. First, the form was not a CHA form given to the doctor for his completion but was one on the letterhead of the Union Health Service. Also, there is sufficient blank space on the form for the doctor to include any limitations on the employee's ability to return to work.

Plaintiff further asserts that the Act does not require that a claimant provide medical evidence that he is unable to perform certain tasks, and that even a reasonable subjective fear that performing a certain job will cause him injury is sufficient to qualify him for benefits. He argues that the Board erred in failing to consider whether he had a reasonable fear that cutting the grass would injure him.

■ In analyzing whether a plaintiff had "good cause" under section 601 of the Act, dealing with claimants who voluntarily leave work, courts have stated that good cause may consist of a reasonable subjective fear concerning the employee's health, even absent the advice of a physician. For a claimant to demonstrate that a health concern is a justifiable reason for leaving his employment, the claimant must (1) offer competent testimony that adequate health reasons existed to justify his leaving work on the date he terminated his employment; (2) have informed the employer of the health problem; and (3) be available, where reasonable accommodation is made by the employer, for work which is not inimical to his health. *Finik v. Department of Employment Security* (1988), 171 Ill. App. 3d 125, 524 N.E.2d 1148; *Zbiegien v. Department of Labor* (1987), 156 Ill. App. 3d 395, 510 N.E.2d 422; *Burke v. Board of Review, Illinois Department of Labor* (1985), 132 Ill. App. 3d 1094, 477 N.E.2d 1351.

■ From our review of the record, we conclude that plaintiff failed to present sufficient evidence on which the Board could have reversed the decision of the referee on the ground that plaintiff had a reasonable subjective belief that assisting Johnson in cutting the grass would cause him injury. We note that the evidence established that the vehicle used to cut the grass and remove garbage was a motor driven tractor which, according to Johnson, did not require much physical assertion to operate. Plaintiff stated at the hearing that his injuries resulted from manually pushing the tractor out onto the grassy area.

However, both he and Johnson testified that the reason plaintiff gave for refusing Johnson's assignment was that plaintiff's injuries resulted from the cutting of the grass. Plaintiff also testified that while he did not expect to be required to cut grass after his sick leave, because he had not been assigned that job during the entire year, he did expect to be required to resume his other chores, including garbage removal.

Of special significance in this case, however, was the written statement of the union physician and plaintiff's attending physician, Dr. Kocalis, who, aware of plaintiff's job duties, stated that plaintiff was physically able to return to work. This document contradicted plaintiff's testimony that both Dr. Kocalis and Dr. Javlin verbally advised him to perform only light duties. Resolution of conflicts in the evidence are within the province of the trier of fact. (*Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 475 N.E.2d 879.) Further, plaintiff's testimony regarding one or more other doctors he had consulted was incohesive and vague as to the identity of those doctors and the dates on which he had consulted them. He acknowledged that Dr. Kocalis' statement was the only medical record relating to the injury from which he had just returned to work. Considering that plaintiff submitted to the CHA a written release from the union doctor stating that he was physically able to return to work, we find no merit in plaintiff's argument that the Board improperly failed to consider his subjective fear of injury from cutting grass.

■ We also reject plaintiff's argument that the Board improperly imposed an evidentiary requirement, not contained in the Act, that he supplement his testimony with a doctor's statement that he was restricted from performing certain tasks. As noted previously, the burden is on the claimant to establish his entitlement to benefits under the Act. (*Siler v. Department of Employment Security* (1989), 192 Ill. App. 3d 971, 549 N.E.2d 760.) Although plaintiff testified that his injuries resulted from cutting grass and that he had received medical advice to restrict his work activities to light duty, that testimony was contradicted by the physician's statement in evidence. The denial of his claim for benefits was not based on his failure to produce documentary evidence supporting his testimony but, rather, because competent medical evidence in the record expressly refuted his testimony.

In summary, we find that the decision denying plaintiff's claim for unemployment insurance benefits was neither erroneous as being the result of any improper application of the law nor as being contrary to the manifest weight of the evidence. Accordingly, we will not disturb the judgment of the circuit court affirming the Board's decision that

plaintiff was discharged for misconduct connected with his work and was, therefore, ineligible for unemployment insurance benefits.

The judgment of the circuit court is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.