DANIEL SHANAHAN, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

First District (4th Division)   No. 85—1377

Opinion filed November 13, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Thomas P. Marnell, Assistant Attorney General, of Chicago, of counsel), for appellant.

Thomas H. Allen, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

The Secretary of State (the Secretary) appeals from the order of the circuit court of Cook County which held, upon administrative review, that the Secretary's decision to deny reinstatement of driving privileges or a restricted driving permit (RDP) to Daniel Shanahan (Shanahan) was against the manifest weight of the evidence. Based upon this determination, the trial court ordered the Secretary to issue

Shanahan a restricted driving permit (Ill. Rev. Stat. 1983, ch. 95½, par. 6—205(c)) and to reinstate Shanahan's driving privileges without restriction (Ill. Rev. Stat. 1983, ch. 95½, par. 6—208(b)). The Secretary appeals.

The Secretary presents two grounds for reversal of the trial court's order. First, the Secretary contends that Shanahan is ineligible for full reinstatement of his driving privileges as a matter of law because of the Secretary's "five-year rule." The Secretary maintains that under this rule, reinstatement of a driver's license is impermissible where the applicant has received two or more convictions of driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501; see also Ill. Rev. Stat. 1983, ch. 95½, par. 6—205(a) (revocation of license)), until at least five years have elapsed since the date of the latest DUI conviction. The Secretary also argues that the trial court's decision was erroneous, because Shanahan's prior convictions of DUI, his driving record, and evidence of his continued alcohol consumption, establish that the reinstatement of his driving privileges or the issuance of an RDP would create an unreasonable risk to public safety and welfare on the highway.

Based upon our review of the record, we conclude that the Secretary's decision was in error. Accordingly, we affirm the portion of the trial court's order which found the Secretary's determination to be against the manifest weight of the evidence. Furthermore, we conclude that the Secretary's *per se* five-year rule is in excess of the Secretary's statutory authority; in view of the length of time which has elapsed since Shanahan's request for either an RDP or reinstatement of his driving privileges, we vacate the orders entered below and remand the matter to the Secretary for further proceedings on Shanahan's application.

BACKGROUND

Shanahan's driver's license was revoked by the Secretary of State on June 8, 1981, on the ground that he had been convicted two or more times of DUI. (See Ill. Rev. Stat. 1981, ch. 95½, par. 6—205(a)(2).) The record reflects that Shanahan was arrested for DUI on March 18, 1978, January 28, 1979, and March 26, 1981, and that these last two arrests resulted in DUI convictions on April 17, 1979, and April 13, 1981.

In September 1983, Shanahan requested that the Secretary of State hold a formal hearing for the purpose of his application for, first, an RDP or, second, for either full reinstatement of his driving privileges or an RDP. The requested formal hearing was held in Octo-

ber 1983.

The hearing officer found that Shanahan's driving record included the following. In the years 1975 to 1976 (when Shanahan was 21 to 22 years old) he was convicted for improper lane usage (August 6, 1975), speeding (October 27, 1975), collision involving damage to vehicles only, failure to stop, exchange information and make a report (January 9, 1976) and improper lane usage (January 20, 1976). The Secretary imposed a discretionary suspension for three or more moving violations within a 12-month period, which was entered on June 23, 1976, and terminated on September 23, 1976. Shanahan was also issued a probationary license from June 30, 1976, to October 3, 1976.

On September 23, 1977, Shanahan was convicted for disregarding an official traffic-control device. Almost six months later, on March 18, 1978, he was arrested for DUI; an implied-consent suspension was entered against him on June 5, 1978, terminating on September 5, 1978. His March 18 arrest also resulted in his conviction for failure to give a stop or turn signal on April 11, 1978. Shanahan was later issued an RDP from June 30, 1978, to October 5, 1978.

On January 28, 1979, Shanahan was arrested for DUI; this resulted in a DUI conviction on April 17, 1979. He had previously been arrested on December 22, 1978; this arrest resulted in a conviction for improper lane usage on March 22, 1979. An order revoking his driver's license and driving privileges was entered effective May 16, 1979, pursuant to section 6—205(a)(2) of the Illinois Vehicle Code (the Vehicle Code) (Ill. Rev. Stat. 1979, ch. 95½, par. 6—205(a)(2)). Thereafter he was issued an RDP, from October 29, 1979, to October 29, 1980.

On March 26, 1981, Shanahan was arrested for DUI. He was convicted for DUI and for driving while license revoked on April 13. An implied-consent suspension was entered against him on June 28, 1981, and terminated on December 28, 1981. An order revoking Shanahan's driver's license and driving privileges was entered effective June 8, 1981, pursuant to section 6—205(a)(2) of the Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 6—205(a)(2)).

At the hearing on his application for reinstatement or an RDP, Shanahan presented the evaluation report of William Downs, a certified alcohol counselor employed by Ingalls Memorial Hospital's Alcoholism Treatment Center. The report, provided on an alcohol/drug assessment form promulgated by the Secretary, was dated September 15, 1983. In it the evaluator observed that Shanahan's drinking pattern increased after high school. The report noted that during this period, Shanahan's alcohol consumption occurred two to three times

per week at an average of 2 to 10 beers per episode. The evaluator observed in the report that Shanahan "state[d] there were times when he would drink more and there was some intermittent loss of control." The report noted that Shanahan "receive[d] two DUI's, the first being in February 1979, and the second March, 1981." The record indicates that Shanahan was born in December 1954. Thus the period to which the evaluation referred as Shanahan's "increased drinking pattern after high school" occurred when Shanahan was approximately 18 to 26 years of age.

The evaluation report commented upon Shanahan's changed behavior in the two years prior to the evaluation in 1983. The report stated that during the time frame of 1981 to 1983, Shanahan's "drinking pattern has consisted of consuming a glass of beer or wine about once every two weeks. Usually this is at home watching [television]." The evaluator noted that Shanahan "denies any blackouts, increase in tolerance or loss of control." The report indicated no identification of a current alcohol or drug problem. It also indicated that Shanahan had undergone an objective test for alcohol abuse specified as MAST [the Michigan Alcoholism Screening Test], although no results of this test were given, or requested, in the evaluation report format.

The evaluator's report also observed that Shanahan entered Ingalls Memorial Hospital's Intensive Outpatient Counseling Program in April 1981. The four-week program's purpose "was to provide an in-depth assessment of the extent of [Shanahan's] alcohol problem and to provide an in-depth education about alcoholism." The evaluator noted that Shanahan "participated in all activities and completed the program in May 1981."

In his report, the evaluator also stated that it was his impression that Shanahan's drinking pattern, prior to the April 1981 counseling program, "indicated symptoms of alcoholism." The evaluator observed that since April 1981, Shanahan "appears to have taken a more responsible attitude toward his past problem. It does not appear he has a current alcohol problem." The evaluator stated that it was also his impression that "no further alcoholism treatment appears warranted."

At the hearing, Shanahan testified that since his last DUI arrest on March 26, 1981, he attended the alcohol counseling course, altered his lifestyle with respect to alcohol, and has not been intoxicated. Shanahan admitted that his past drinking habits indicated alcohol abuse, but he was unclear in response to questioning regarding whether he was, in the past, an active "alcoholic," which he defined

as someone who was "dependent" upon alcohol. He testified that he had "just be[en] around people that used and enjoyed alcohol" in the past, and that he never felt dependent upon alcohol, never experienced a loss of memory or consciousness from consuming alcohol, and he never engaged in the daily use of alcohol. Shanahan stated that his past problem "was a weekend-type thing, out with your friends at a party or something. It wasn't the case of losing control of your body functions, just a matter of becoming a little bit inebriated." He also testified that he had gone to "a couple of meetings" of Alcoholics Anonymous, and that no counselor recommended that he attend. Shanahan described his current drinking habits as an "occasional beer every other two or three weekends, usually at home on a Saturday night, at home watching TV or a glass of wine." He also testified that he never has any alcohol at parties, because he "know[s] the effects of [alcohol] [and] *** [t]he possibility that [he] would have [a recurrence of] problems with alcohol."

Shanahan also testified that he lives 8 miles from his place of employment and that there is no public transportation between his home and his job. He is also required to drive sometimes at work. He stated that his employer has orally advised him that his employment would be terminated if he is not granted some kind of driver's license. His employer also submitted a statement in support of Shanahan's application, stating that it was imperative that Shanahan receive a license. Shanahan further testified that he would soon be married.

William Ryan, a friend of Shanahan, testified at the hearing that there had been a dramatic change in Shanahan's lifestyle since his last arrest, and that Shanahan did not have a current drinking problem. Ryan further testified that since Shanahan's last arrest for DUI, Ryan had not seen Shanahan in an intoxicated state. Ryan stated that he had only seen Shanahan drink on three or four occasions, and on those occasions, Shanahan consumed "probably never more than two-three bottles of beer." Ryan testified that he was an attorney, that he was not an alcohol counselor, and had no training in the treatment of alcoholism.

The hearing officer concluded that Shanahan did not appear to have a current problem with alcohol, that he demonstrated undue hardship in his capacity to maintain employment and that given his history of driving violations and abuse of alcohol, an RDP was the only appropriate remedy, rather than reinstating his driving privileges. The officer therefore recommended that Shanahan be denied reinstatement but issued an RDP.

The Secretary, however, did not concur in the hearing officer's

conclusions. Specifically, the Secretary found an inconsistency between Shanahan's reported current drinking pattern and the testimony of his witness. The Secretary determined that this inconsistency cast doubt on the credibility of Shanahan's testimony regarding his current drinking habits. The Secretary also determined that because the alcohol evaluator focused on two DUI arrests, rather than Shanahan's three DUI arrests, the probative value of the evaluator's assessment was minimized. The Secretary further noted the evaluator's impression that Shanahan's prior drinking pattern indicated, according to the Secretary, "symptoms of alcoholism without abstinence. (92 Ill. Admin. Code. sec. 1001.440(e)." Based upon these considerations, the Secretary denied Shanahan's petition for an RDP in a written order dated December 22, 1983.

Thereafter, Shanahan filed a complaint for administrative review. (See Ill. Rev. Stat. 1983, ch. 95½, pars. 2—118(e), 6—212; Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*) On July 26, 1984, the trial court remanded the matter to the Secretary, retaining jurisdiction to adjudicate the cause. Shanahan was ordered to provide an affidavit from Downs, the certified alcohol counselor who evaluated Shanahan's condition in September 1983. The court directed that Downs state in the affidavit whether Shanahan "had a clinical impression of alcohol abuse/alcoholism at the time of the assessment in September, 1983." The trial court also ordered the Secretary to review the transcript of the matter in light of Downs' affidavit and to render a decision within 30 days after Downs' affidavit was presented.

On remand, Downs stated in his affidavit that when he interviewed Shanahan and assessed his condition in May 1981, it was Downs' opinion that Shanahan manifested "symptoms of middle-stage alcoholism." Downs saw Shanahan again on September 12, 1983, for further alcohol evaluation. Downs stated that "[b]ased upon [his] observation and information corroborated by others during the interview, the information elicited from Mr. Shanahan [was] accurate." Downs stated it was his opinion that Shanahan "appeared to be handling the consequences of his prior actions in a natural and responsible manner. There were no signs of dependency or evidence of alcohol abuse whatsoever. Certainly, no further treatment would be indicated."

The hearing officer also entered revised findings and recommendations on remand. The hearing officer noted the "inconsistencies" in the testimonies of Shanahan and Ryan regarding Shanahan's current drinking pattern. The officer observed that "[t]his inconsistency indicates that the Petitioner on occasion would consume more than one

glass of beer or wine and appears to be an attempt to minimize his current drinking habits." The officer also noted the contradiction in "the Petitioner's opinion that he has never had a serious drinking problem, despite the alcoholism counselor's finding that the Petitioner in the past manifested symptoms of middle-stage alcoholism."

The officer also observed that at Shanahan's hearing, "[n]o documentation was presented in the form of an assessment of the Petitioner's participation and readiness for treatment, which should include aftercare recommendations and an indication of the Petitioner's participation in aftercare, as required by Chapter II, 92 Illinois Administrative Code, Section 110.440(d). Therefore, the Petitioner failed to present sufficient evidence to determine the nature and extent of his drinking problem and whether or not he has adequately addressed said problem." In this regard, the officer considered in detail the significance of Downs' affidavit. The hearing officer noted that "[s]ince the Petitioner could have been classified as a middle-stage alcoholic in May of 1981, there is a question as to whether he should be drinking at all even though he has been drinking in a controlled manner for over two years."

The officer then quoted at length from a book on alcoholism regarding the nature of "middle-stage alcoholism." This text included the statement, " 'Many middle-stage alcoholics can successfully control or appear to control their drinking throughout a period of probation ***. These temporary control strategies are often misinterpreted as evidence that the person is not addicted to alcohol and could control his drinking if he would only put his mind to it. Occasional "slips" are concealed or rationalized ***.' (See 1 *Under the Influence—A Guide to the Myths and Realities of Alcoholism*, p. 94 (MILAM & KETCHAM ed. 1981))." The hearing officer further noted that " 'virtually all the effective programs have in common the understanding that alcoholism is a disease that can be arrested but not cured and that the cornerstone of full recovery must be continuous total abstinence from alcohol and substitute drugs.' (See 1 *Under the Influence—A Guide to the Myths and Realities of Alcoholism*, p. 131 (MILAM & KETCHAM ed. 1981))." The officer observed that "[i]f the Petitioner is alcoholic, stressing the lack of clear and convincing evidence that he is not and substantial evidence that he is, including a long history of abusive drinking, intermittent loss of control, three arrests for DUI and the alcoholism counselor's finding that the Petitioner manifested symptoms of middle-stage alcoholism; then there are specialized private and public treatment programs for alcoholics, many of which are effective."

The officer further found that Shanahan had failed to present evidence to demonstrate that he had had a year of "documented abstinence," as required under section 1001.440(e) of the Secretary's regulations. The officer reasoned that "the evidence clearly established that, prior to May of 1981, the Petitioner at the very least abused alcohol and he in fact manifested symptoms of middle-stage alcoholism." The officer also observed that "[s]imply because an individual no longer exhibits symptoms of dependence or abuse does not indicate that his problem no longer exists since as pointed out previously, 'alcoholism is a disease that can be arrested but not cured.'" The officer found that "since the Petitioner manifested symptoms of middle-stage alcoholism and is currently drinking in a controlled manner, the risk is substantial that he will at some point lose control, as in the past, and return to abusive drinking." The officer concluded that Shanahan therefore presented "an unacceptable risk of endangering the public safety and welfare."

On November 29, 1984, the Secretary entered an order upon reconsideration which denied Shanahan's application for reinstatement or an RDP.

The trial court entered an order on April 12, 1985, which found that the Secretary's denial of reinstatement or an RDP was against the manifest weight of the evidence and an abuse of discretion. The court ordered the Secretary to issue Shanahan an RDP and also to issue to Shanahan "the full reinstatement of his driving privileges without restriction." The Secretary's timely appeal followed.

On July 22, 1985, the trial court denied the Secretary's motion for stay of the court's prior order, the court finding that it had lost jurisdiction over the cause. Thereafter, on August 2, the Secretary filed with this court a motion for stay of the trial court's order directing that the Secretary issue to Shanahan both reinstatement and an RDP. This motion was allowed by order of this court entered August 15, 1985, over Shanahan's objection.

OPINION

Initially, we note that the basis for the Secretary's denial of Shanahan's application differed when the Secretary originally entered its denial order in December 1983, and later when the Secretary entered its denial order upon reconsideration in October 1984. Furthermore, the Secretary's regulations regarding reinstatement or an RDP were modified effective April 1984, during the pendency of the action before the trial court. In addition, it is unclear from the Secretary's 1983 order whether the Secretary considered Shanahan's application

according to the Secretary's 1983 regulations or the Secretary's 1984 regulations. In light of these circumstances, we consider the sufficiency of the Secretary's order upon reconsideration only, in light of the Secretary's 1984 regulations.

■ The Secretary argues first that Shanahan is ineligible for full reinstatement of his driving privileges as a matter of law because of the Secretary's "five-year rule," citing to 92 Ill. Admin. Code, ch. II, sec. 1001.440(g) (1983). Section 1001.440 became effective on July 17, 1983. (See 7 Ill. Reg. 7501, 7507 (1983).) Subsection (g), as effective when Shanahan's request for reinstatement or RDP was originally denied by the Secretary in December 1983, provided that with respect to an applicant who has had at least two DUIs, "there is a presumption that the applicant has an alcohol or drug problem, and reinstatement will not occur until at least five (5) years have expired since the date of the latest conviction." (92 Ill. Admin. Code, ch. 11, sec. 1001.440(g) (1983), 7 Ill. Reg. 7501, 7529 (1983).) Subsection (f), which amended subsection (g) in April 1984, is the regulation of the Secretary which established the *per se* five-year prohibition against reinstatement. (See 92 Ill. Admin. Code, ch. II, sec. 1001.440(f) (1984), 8 Ill. Reg. 4220, 4246 (1984).) Since subsection (g) applies only to reinstatement, the Secretary's five-year bar provides no basis for its denial of Shanahan's request for an RDP.

We concur in the conclusion and analysis of the Fourth District in *Franz v. Edgar* (1985), 133 Ill. App. 3d 513, 478 N.E.2d 1165, *appeal denied* (1985), 108 Ill. 2d 562, and in *Sutton v. Edgar* (1986), 147 Ill. App. 3d 723, that the Secretary's five-year bar "may not be applied to deny plaintiff restoration of driving privileges as it is in excess of the statutory grant of [the Secretary's] authority." (*Franz v. Edgar* (1985), 133 Ill. App. 3d 513, 523, 478 N.E.2d 1165, 1171; see also *Sutton v. Edgar* (1986), 147 Ill. App. 3d 723, 731.) Section 6—208(b)(2) of the Code explicitly provides that "[a]ny person whose license or permit or privilege to drive a motor vehicle on the highways has been revoked *** may make application for a license *** [a]fter the expiration of 1 year from the date of revocation ***." (Ill. Rev. Stat. 1983, ch. 95½, par. 6—208(b)(2).) As the *Franz* court observed,

"As promulgated and applied, the rule stated by the Secretary functions as an irrebuttable presumption or *per se* rule that a license shall be denied upon application regardless of what evidence may be presented in support of the application. As so applied, the rule nullifies and makes meaningless section 6—208(b)(2) of the Code, which expressly authorizes application within one year. Administrative discretion granted by statute

to make rules is to be exercised within the terms of the statute, and the exercise of discretion in administering the rule is to be determined upon evidence of record and cannot be exercised arbitrarily or capriciously in disregard of matters of evidence. In sum, the statute authorizes the application for a license, but the administration of the administrative rule effectively results in a refusal to consider the application upon its merits. The statute which is being administered may not be added to or altered by the exercise of a power to make administrative rules or regulations. (*Ruby Chevrolet, Inc. v. Department of Revenue* (1955), 6 Ill. 2d 147, 151, 126 N.E.2d 617, 619.)" *Franz v. Edgar* (1985), 133 Ill. App. 3d 513, 519-20, 478 N.E.2d 1165, 1169.

The Secretary argues that *Franz* was wrongly decided for two reasons. First the Secretary contends that the court in *Franz* "erred in concluding that this rule [*i.e.*, the five-year bar] does not differentiate between applications for reinstatement of a license or issuance of a restricted driving permit." Our analysis of the court's decision in *Franz* does not indicate that the court considered the five-year ban applicable to both reinstatement and RDP requests.

The Secretary also argues that *Franz v. Edgar* was wrongly decided because the court "focused solely on section 6—208(b)(2) of the Code authorizing applications for reinstatement within one year after revocation of a license and did not consider a grant of authority to the Secretary contained in section 6—103(4) of the Code as a basis for promulgating the five-year rule."

Section 6—103(4) states, "The Secretary of State shall not issue or renew any driver's license nor issue any permit \*\*\* [t]o any person, as a driver, who is a habitual drunkard, or is a habitual user of narcotic drugs, or is a user of any other drug to a degree which renders such person incapable of safely driving a motor vehicle \*\*\*." (Ill. Rev. Stat. 1983, ch. 95½, par. 6—103(4).) The Secretary claims that although the Vehicle Code does not define the term "habitual drunkard," the Secretary has the power to interpret and implement this provision under the Code's delegation to the Secretary of the authority to adopt rules and regulations carrying out the provisions of the Code. (Ill. Rev. Stat. 1983, ch. 95½, par. 2—104(b).) The Secretary then claims in its appellate brief that under this rule-making authority, "the Secretary has determined that any driver with multiple convictions for DUI is a 'habitual drunkard' who will not be immediately eligible for *full-reinstatement* [*sic*] of his license under the five-year rule." (Emphasis in original.)

We disagree with the Secretary's interpretation of subsection (g)

(or subsection (f)) as nothing more than a determination that a driver with multiple DUI convictions is an "habitual drunkard not *immediately* eligible" for full reinstatement. Instead, the *per se* five-year bar is a conclusion not only that any driver with at least two DUI convictions is an "habitual drunkard," but also that the driver must remain without reinstatement for five years "since the date of the latest conviction" before the driver will even be permitted to demonstrate recovery from the "habitual drunkenness" sufficient to obtain reinstatement of driving privileges. (*Cf.* 92 Ill. Admin. Code, ch. 11, sec. 1001.440(f) (1984), 8 Ill. Reg. 4220, 4246 (1984) (requiring five years "since the date of the latest revocation").) In other words, both subsection (g), as interpreted by the Secretary before this court as a *per se* rule, and subsection (f), as applied by the Secretary to Shanahan upon remand of the matter by the trial court, create an irrebuttable presumption that any driver with at least two DUIs is an "habitual drunkard" and that reinstatement of that person's driving privileges any earlier than five years following revocation of the individual's license will create a threat to public safety on the highway, regardless of the evidence of recovery from active alcoholism which the applicant may present.

We recognize that the Illinois legislature empowers the Secretary to deny full driving privileges to anyone who is an "habitual drunkard." The legislature has not, however, adopted a provision establishing a five-year ban on the reinstatement of driving privileges to anyone with at least two DUIs. As the court noted in *Franz*, "sections 6—205(b)(2) and (3), relating to the mandatory revocation of a driver's license upon the second conviction of certain sex offenses described by statute, has itself provided a period of five years from the completion of the sentence imposed before an operator's license may be issued. (See Ill. Rev. Stat. 1983, ch. 95½, pars. 6—205(b)(2), (3).) It is apparent that the legislature has discovered the statutory device of the bar of an extended five-year period, and was aware of the same but *** [has] not seen fit to impose that sanction upon the second conviction of DUI." *Franz v. Edgar* (1985), 133 Ill. App. 3d 513, 520, 478 N.E.2d 1165, 1170.

The Secretary's role in the reinstatement of driving privileges is to ensure the public safety on the highways. In the performance of this duty, the Secretary is empowered to deprive a person of driving privileges when that person is an "habitual drunkard." (Ill. Rev. Stat. 1983, ch. 95½, par. 6—103(4).) The Secretary's obligation to protect public safety does not encompass the discretionary power, however, to impose an additional period of deprivation of a person's driving privi-

leges beyond the statutory period of a year on no ground other than the circumstance that the applicant was, in the past, an active alcoholic.

As a result, where the Secretary determines that an applicant's request for reinstatement should be denied because the applicant's condition remains actively alcoholic, the Secretary must clearly so determine in its denial of the applicant's reinstatement request. The Secretary cannot instead rely upon its statutory authority to adopt administrative rules, and thereby irrebuttably presume that any applicant with two DUI convictions is an active alcoholic who will remain a threat to public safety on the highways for five years following either conviction or revocation of the applicant's license, without regard to the evidence of recovery presented by the applicant.

Although not noted by the Secretary, we observe that the Secretary's denial of Shanahan's request for reinstatement or an RDP was also founded upon Shanahan's failure to present evidence of "aftercare" treatments and recommendations. As a result, we consider whether denial of Shanahan's application for reinstatement or an RDP was proper on this basis.

Section 1001.440(a) states that all applicants for reinstatement or RDP "must submit an alcohol or drug evaluation and evidence of successful completion of an alcohol- or drug-related driver remedial course." (92 Ill. Admin. Code, ch. II, sec. 1001.440(a) (1984); 8 Ill. Reg. 4220, 4242 (1984).) Subsection (d) of the Secretary's regulations further provides that "when [an] applicant states that he/she has had alcoholism treatment," the applicant "must" submit "evidence," and that the applicant "should document" the name and address of the treatment center, the length of treatment, the applicant's participation and readiness for treatment, aftercare recommendations and the applicant's adherence thereto, and any recommendations. (92 Ill. Admin. Code, ch. II, sec. 1001.440(d) (1984); 8 Ill. Reg. 4220, 4242 (1984).) The Secretary's denial order was based upon Shanahan's failure to comply with subsection (d), which applies where an applicant has also had "alcoholism treatment."

■ Shanahan testified at the hearing that he had submitted to an alcohol evaluation and a remedial driving program. The evaluator's report, admitted into evidence at the hearing, demonstrated that his alcohol abuse evaluation, in September 1983, showed no current alcohol abuse or problem, and also indicated that Shanahan had successfully completed an alcohol-related driver remedial course. Shanahan never testified that he had undergone "alcoholism treatment," and the evaluator's report did not state that such treatment for Shanahan was

ever mandated, appropriate, or even advisable. As a result, the Secretary's reliance upon subsection (d) was without basis, and the order denying Shanahan an RDP or reinstatement on this basis was reversible as arbitrary and capricious.

Although not addressed by the Secretary, we also consider whether the Secretary properly denied Shanahan's application on the ground that he failed to present evidence of 12 consecutive months of "documented abstinence" because he had a "clinical impression of alcoholism." (See 92 Ill. Admin. Code, ch. II, sec. 1001.440(e) (1984); 8 Ill. Reg. 4220, 4222, 4246 (1984).) We note that subsection (e) is almost identical to subsection (f) under the prior section 1001.440 in effect when the Secretary entered its December 1983 order denying Shanahan an RDP (see 92 Ill. Admin. Code, ch. II, sec. 1001.440(f) (1983); 7 Ill. Reg. 7501, 7529 (1983)), except that the 1983 subsection required 12 consecutive months of "documented sobriety" or, in the case of waiver, at least 6 months of "continued sobriety," rather than a specified period of "abstinence."

■ We determine that the Secretary's denial was not properly founded on Shanahan's lack of proof of one year of "abstinence" because of a "clinical impression of alcohol abuse/alcoholism." First, since the Secretary's regulations do not define the term "clinical impression of alcohol abuse/alcoholism," we are unable to determine whether the evaluator's report of Shanahan here indicated such a "clinical impression" in 1983. (See *Franz v. Edgar* (1985), 133 Ill. App. 3d 513, 521, 478 N.E.2d 1165.) In addition, it appears that the hearing officer erroneously treated the opinions of undisclosed authors in a book on alcoholism as substantive evidence that Shanahan could only "control" his "drinking problem" by total abstinence. (See generally E. Cleary & M. Graham, Illinois Evidence, sec. 202, at 42-49 (4th ed. 1984).) Furthermore, the conclusion that Shanahan could only control his "drinking problem" by total abstinence was directly contradicted in William Downs' affidavit and his evaluation report, and the Secretary presented no evidence at the hearing to demonstrate that Shanahan's "drinking problem" was other than Downs found it to be. As a result the Secretary's denial of Shanahan's request for reinstatement or an RDP was unsupported by the evidence presented at the hearing.

■ We also disagree with the Secretary's argument on appeal that Shanahan's continued consumption of alcohol (the extent of which the Secretary questions in view of the inconsistency between Shanahan's testimony and that of his friend, Ryan), and Shanahan's past driving record, establish that issuance of another RDP to Shana-

han would threaten the public safety and welfare.

The determination of whether reinstatement or an RDP in the instant cause will threaten public safety must be made within the framework of the Vehicle Code and the Secretary's regulations pursuant thereto. The determination of public safety cannot be made separately from and without regard to the Code and the administrative regulations, as the Secretary's argument erroneously assumes. As stated above, none of the Secretary's regulations supports its denial of Shanahan's application for reinstatement or an RDP based upon the evidence presented. As a result, we cannot determine upon administrative review that the Secretary's decision was proper. *Cf. Cusack v. Edgar* (1985), 137 Ill. App. 3d 505, 484 N.E.2d 1145; *Sheldon v. Edgar* (1985), 131 Ill. App. 3d 489, 475 N.E.2d 956.

Fully three years have passed since the Secretary's hearing on Shanahan's application for reinstatement or an RDP, and more than five years have elapsed since the Secretary's revocation of Shanahan's license. (See 92 Ill. Admin. Code, ch. II, sec. 1001.450 (1983); 7 Ill. Reg. 7501, 7529 (1983) (permitting another hearing six months after denial of reinstatement or RDP applications); 92 Ill. Admin. Code, ch. II, sec. 1001.450 (1984); 8 Ill. Reg. 4220, 4246 (1984) (permitting another hearing four months after denial); *Sutton v. Edgar* (1986), 147 Ill. App. 3d 723, (applicant has burden of going forward and proving grounds for reinstatement or RDP by clear and convincing evidence).) Under these circumstances, we vacate the orders entered by the Secretary and the trial court and remand the cause to the Secretary for further proceedings to include any additional evidence, since the date of the original hearing, that may be presented with regard to the issues raised.

Vacated and remanded.

LINN, P.J., and JOHNSON, J., concur.