CARSON PIRIE SCOTT & COMPANY, Plaintiff-Appellee and Cross-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, Sally A. Ward, Director, Defendant-Appellant and Cross-Appellee.

First District (4th Division) No. 85—3359

Opinion filed August 27, 1987.—Rehearing denied January 22, 1988.

McMORROW, P.J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellant.

Richard Martin Lyon and Mark A. Casciari, both of Seyfarth, Shaw, Fairweather & Geraldson, and Robert J. Kartholl, Jr., of Carson Pirie Scott & Company, both of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, State of Illinois Department of Employment Security (hereinafter referred to as the Department), presents for decision the construction and interpretation of section 1508 of the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1981, ch. 48, par. 578) as a matter of first impression. This appeal arises after plaintiff, Carson Pirie Scott & Company (hereinafter referred to as Carson) obtained judicial review in the trial court of a final decision of the Director of Labor (now the Director of Employment Security and hereinafter referred to as the Director), denying Carson's application for cancellation of 56 benefit wage charges. The circuit court set aside the administrative decision and the Department appeals.

We reverse.

The Unemployment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 300 *et seq.*) (hereinafter referred to as the Act) provides, in general summary, that contributions assessed from employers within the State are the primary source of income to the State's Unemployment Trust Fund account (hereinafter referred to as the Fund). Each employer initially contributes to the Fund according to a specified statutory rate. After a specified time, the Department will determine that employer's individual, variable contribution rate through use of an experience rating system. This system allocates the cost of fund replenishment among employers on the basis of their experience with the risk of unemployment. In other words, an employer whose current or former employees have received proportionately more benefits will have to pay contributions at a higher rate than an employer whose employees have made few or no claims against the Fund.

To obtain a variable contribution rate for a given calendar year, an employer must have incurred liability for the payment of contributions in each of the three calendar years (or two calendar years as of 1984) immediately preceding the year for which the variable rate is to be determined. His contribution rate is determined annually, and he receives notification of the rate in March of the applicable year. The formula used to determine an employer's variable contribution rate is as follows:

Benefit Wage x State Experience + Emergency = Contribution
 Ratio Factor Rate Rate

In the instant case, only the benefit wage ratio need be examined.

An individual's "benefit wages" may be defined as a statutorily set portion of the wages which were paid by an employer to him during his base period (for definitions see Ill. Rev. Stat. 1981, ch. 48, pars. 347 through 352). An employer's benefit wages are the total benefit wages assigned for each of its former employees who receives regular or extended benefits. The total of an employer's benefit wages for 12 consecutive calendar quarters becomes the numerator of a fraction called the benefit wage ratio.

Thus, the amount of benefit wages attributed to an employer for any particular quarter will be part of the calculation of his contribution rates; if the employer is able to reduce the amount of benefit wages assigned to his account, he may succeed in reducing his contribution rate for the subsequent years. When benefits are paid, the benefit wage charges accrue immediately against the employer, even if it is eventually concluded that the claimant was ineligible to receive them. The employer continues to carry the benefit wage charges unless and until there is a reversal of the claimant's eligibility for the benefits. Therefore, if the employer is successful in his appeal, be it before a referee, the Board of Review, the circuit court, or a higher court, the benefit wages charged to his account are removed and no longer used for purposes of the employer's rate calculations. A statement listing all the benefit wage charges on an employer's account is furnished by the Director annually. It is from an objection to this statement that this appeal arises.

The record reveals that on March 13, 1981, the Department mailed to Carson a statement of benefit wages covering the period from October 1, 1980, until December 31, 1980. The statement consisted of 484 benefit wage charges. By letters, dated April 20 and 21, 1981, Carson submitted its application for revision of the statement and requested cancellation of 246 of those charges. In an order dated February 26, 1982, the Director cancelled, in part or in their entirety,

75 benefit wage charges and said that eight additional charges would be cancelled in the future. The Director denied Carson's application for revision as to the remaining charges.

On March 18, 1982, Carson acknowledged receipt of the Director's order and resubmitted its application for revision, requesting either additional consideration of the first application or to schedule a hearing. By order dated April 8, 1982, the Director refused to cancel three benefit wage charges which she had not addressed earlier, and on April 28, 1982, Carson withdrew its request on two of these charges and otherwise reasserted its position. A further order of the Director was entered on September 1, 1982, cancelling certain additional charges and denying the balance of Carson's renewed request. These denied requests were deemed to be protests and petitions for hearing. Thus, a hearing was scheduled as to the remaining challenges; however, Carson withdrew its petition for revision of 44 of the charges prior to the hearing.

On October 21, 1982, a representative of the Director conducted an evidentiary hearing on the merits of Carson's application for revision. The hearing officer subsequently issued a report recommending cancellation of 21 charges and affirmance of the balance. Carson objected to the hearing officer's report and challenged the refusal to cancel 57 of the 58 remaining charges. The Director, after considering the hearing officer's recommendations and Carson's objections, issued a final decision on April 12, 1983, cancelling the charges as recommended by the hearing officer plus one additional charge, and otherwise affirming the order of September 1, 1982. Therefore, 56 charges remained at issue following the Director's final order.

Carson filed a complaint in the circuit court of Cook County for administrative review on May 17, 1983. The circuit court issued its memorandum of decision on October 5, 1985, setting aside the final order of the Director and concluding that Carson was entitled to cancellation of the remaining 56 charges. Carson then filed a motion for an award of reasonable expenses of litigation, including attorney fees, pursuant to the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1985, ch. 127, par. 1014.1(b)). The trial judge denied this motion. The Department appeals the October 5 decision; however, in its brief before this court, it concedes to the cancellation of five of the benefit wage charges and contests only the remaining 51 charges. This appeal raises two issues: (1) whether the trial court correctly construed section 1508 of the Act; and (2) whether Carson was entitled, as a matter of law, to cancellation of the remaining 51 benefit wage charges in accordance with statutory and regulatory criteria. Carson cross-ap-

peals, contending that the trial court erred in denying its motion for an award of reasonable expenses of litigation.

## I

The gravamen of this appeal is the construction of section 1508 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 578). The parties present vastly differing interpretations of the intent of this section. The Department, through the Director, construes section 1508 to provide an employer with a second chance for a hearing on the eligibility of a claimant and resultant propriety of a benefit wage charge when that employer has been deprived of his first chance due to lack of notice. Carson, on the other hand, views the focus of section 1508 as addressing the failure of the Department to give the employer the requisite notice as prescribed by those sections governing the processing of claims for benefits.

■ Although this appeal arises from the administrative review of an agency decision, it presents issues of statutory construction, which are questions of law. (*Johnson v. City of Evanston* (1976), 39 Ill. App. 3d 419, 423, 350 N.E.2d 70, 74.) Thus, we are not bound to give the same deference to the agency's conclusions as we would be if they were conclusions of fact, but must exercise independent review. (*Flex v. Department of Labor, Board of Review* (1984), 125 Ill. App. 3d 1021, 1023-24, 466 N.E.2d 1050, 1053.) " 'While we might affirm a factual conclusion as not against the manifest weight of the evidence although we would have reached the opposite conclusion, we cannot let stand a decision based upon an erroneous construction of a statute.' " 125 Ill. App. 3d 1021, 1024, 466 N.E.2d 1050, 1053, quoting *Dunaway v. Department of Labor, Bureau of Employment Security, Division of Unemployment Insurance* (1982), 109 Ill. App. 3d 63, 68, 440 N.E.2d 231, 234.

■ Since the key focus of statutory construction is to ascertain the intent of the legislature (see *People ex rel. Dickey v. Southern Ry. Co.* (1959), 17 Ill. 2d 550, 162 N.E.2d 417; *Morris v. The Broadview, Inc.* (1944), 385 Ill. 228, 52 N.E.2d 769), we are directed to section 100 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 300). There, our legislators have specifically declared the public policy underlying the Act as the alleviation of the effects of involuntary unemployment. Clearly, the words of the legislators themselves are the most reliable source from which to ascertain legislative intent. (See *Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 374 N.E.2d 211.) This intent, therefore, must serve as a guide to our interpretation and application of the Act's provisions. Furthermore, our supreme court has held that due

to the Act's remedial purpose, it should be liberally construed. See *Pipe Trades, Inc. v. Rauch* (1954), 2 Ill. 2d 278, 118 N.E.2d 319.

Section 1508 of the Act provides as follows:

"The Director shall periodically furnish each employer with a statement of the wages of his workers or former workers which became his benefit wages together with the names of such workers or former workers, and any such statement, in absence of an application for revision thereof within 45 days from the date of mailing of such statement to his last known address, shall be conclusive and final upon the employer for all purposes and in all proceedings whatsoever. Such application for revision shall be in the form and manner prescribed by regulation of the Director. If the Director shall deem any application for revision insufficient, he shall rule such insufficient application stricken and shall serve notice of such ruling and the basis therefor upon the employer. Such ruling shall be final and conclusive upon the employer unless he shall file a sufficient application for revision within 20 days from the date of service of notice of such ruling. Upon receipt of a sufficient application for revision of such statement within the time allowed, the Director shall order such application allowed in whole or in part or shall order that such application for revision be denied and shall serve notice upon the employer of such order. Such order of the Director shall be final and conclusive at the expiration of 20 days from the date of service of such notice unless the employer shall have filed with the Director a written protest and a petition for hearing, specifying his objections thereto. *** No employer shall have the right to object to the benefit wages with respect to any worker as shown on such statement unless he shall first show that such benefit wages arose as a result of benefits paid to such worker in accordance with a finding, reconsidered finding, determination, or reconsidered determination, to which such employer was a party entitled to notice thereof, as provided by Sections 701 to 703, inclusive, and shall further show that he was not notified of such finding, reconsidered finding, determination, or reconsidered determination in accordance with the requirements of Sections 701 to 703, inclusive. Nothing herein contained shall abridge the right of any employer at such hearing to object to such statement of benefit wages on the ground that it is incorrect by reason of a clerical error made by the Director or any of his employees." Ill. Rev. Stat. 1981, ch. 48, par. 578.

■ To properly construe this provision, we are required to read the statute as a whole, considering all relevant parts (*People v. Jordan* (1984), 103 Ill. 2d 192, 206-07, 469 N.E.2d 569, 576) such that each word, clause, and sentence is given a reasonable meaning (*Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 216, 447 N.E.2d 394, 397). However, where the statutory language is clear the court may not depart from its plain language. *Harvey Firemen's Association v. City of Harvey* (1979), 75 Ill. 2d 358, 363, 389 N.E.2d 151, 153.

■ The plain language of section 1508 of the Act indicates that it is a method whereby an employer may challenge the benefit wages charged to his account as they are reflected in the statement issued by the Director. Either expressly or by reference, it delineates (1) which employers have standing to object to the benefit wage charge; (2) the manner and form in which the objection must be made to be deemed sufficient; and (3) the requirements for the objection to be timely. Recognizing that the statute only provides standing to those employers who were entitled to, but did not receive, notice of the findings, determinations, reconsidered findings, or reconsidered determinations, it becomes apparent that this section operates as a safeguard of an employer's right to protest the eligibility of a particular claimant where the employer has been deprived of his original protest right by the failure of notice.

The statutory scheme of the claims processing sections of the Act substantiates this construction. Section 701 (Ill. Rev. Stat. 1981, ch. 48, par. 451) authorizes the claims adjudicator to make a "finding" as to the amount of wages for insured work the claimant earned during the base period and to notify the designated employer or employers of this finding. An "allegation of ineligibility" may then be filed with the department contesting that claimant's right to benefits. If the allegation is sufficient for consideration, section 702 (Ill. Rev. Stat. 1981, ch. 48, par. 452) requires the claims adjudicator to make a "determination" as to whether the claimant is eligible. The employer whose allegation served as the basis for this determination is notified of it and may appeal, sequentially, to a referee (Ill. Rev. Stat. 1981, ch. 48, par. 470), the Board of Review (Ill. Rev. Stat. 1981, ch. 48, par. 473), and for judicial review (Ill. Rev. Stat. 1981, ch. 48, par. 520). Where the claims adjudicator denies consideration of the allegation of ineligibility because it is insufficient, he must notify the alleging employer of the "decision," which is also appealable. Section 703 (Ill. Rev. Stat. 1981, ch. 48, par. 453) permits the claims adjudicator to "reconsider" his prior "findings" and "determinations."

As we discussed previously, once benefits are paid to a claimant they become benefit wage charges on the account of his base period employers until there is a reversal of the claimant's eligibility. Section 1508 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 578) requires the Director to send each employer an annual "statement of benefit wages" charged to his account that will be considered in establishing his contribution rate. It further provides a process to contest these charges on presentation of "application for revision" that is sufficient for consideration, in the event the employer failed to receive his section 701, 702 or 703 notice. The Act goes on to provide, in section 1509 (Ill. Rev. Stat. 1981, ch. 48, par. 579), for the Director to provide each employer with notice of his annual "contribution rate." This also may be objected to by filing a sufficient application for review if the employer failed to receive his section 1508 benefit wage statement. Thus, the likelihood of an administrative error resulting in the Department's failure to send the requisite notice of a claim to the employer was contemplated and compensated for by the legislators in the drafting of this Act.

## II

Having construed the purpose of section 1508 of the Act, we now address the application of its criteria to the benefit wage charges on Carson's account that are at issue here. The Department has grouped the contested charges into three categories representing the reasons it denied Carson's application for revision. The four charges grouped into category I were denied because Carson did not present a sufficient application for revision. The 29 charges represented in category II and the 17 charges in category III were denied because Carson lacked standing under section 1508 as to those charges. Carson contends that it met its section 1508 burdens of standing and sufficiency as to the charges in all three categories.

### CATEGORY I

The Department denied Carson's application for revision as to the category I charges because the company did not present a sufficient application, in that it did not provide any evidence of ineligibility. Carson argues first that the Department conceded compliance with all conditions precedent by permitting it to proceed to a hearing on these charges.

According to section 1508 of the Act, the Department need only grant a hearing upon a *sufficient* application for revision. When an in-

sufficient application is submitted, the statute directs the Department to simply strike the application and await the timely filing of a sufficient one before proceeding to the merits of the employer's request.

The Department acknowledges that Carson's application was not stricken for insufficiency prior to a hearing. It argues that the sheer volume of the company's protest, which requested cancellation of 246 of the 484 charges, rendered impracticable any attempt by the Director to make a global assessment of the sufficiency or insufficiency of the application presented. Thus, it claims, Carson received a hearing to which it was not entitled.

■ Had Carson been notified of the insufficiency of the application upon submission, its only recourse would have been to submit an application confirming to the Department's concept of sufficiency. A denial of the requested cancellations on a sufficient application would have afforded the company a hearing. Here, Carson's application was deemed insufficient; yet, it erroneously was granted a hearing. We fail to discover, and Carson fails to show us, any manner in which it was prejudiced by the granting of a hearing where one could have been denied. Thus, Carson was granted more due process protection than it was entitled to and, although in error, the granting was to the benefit of the company, causing no harm.

Carson goes on to argue, in the alternative, that its application for revision was sufficient as to the category I charges. As the company points out, section 1508 provides that the application for revision be submitted in the "form and manner prescribed by regulation of the Director." (Ill. Rev. Stat. 1981, ch. 48, par. 578.) The Director's form and manner regulation is Department Regulation 302, which provides that an application shall be sufficient if it makes four statements. The first and third statements are the name, address and employer identification number, and the name and social security number of any worker with respect to whom benefit wages are contested. The fourth factor repeats the language at the end of section 1508 requiring a showing of standing. No issue is raised as to whether Carson satisfied these requirements. The second factor, at issue here, requires the employer to make "[a] statement of the reasons for the application for revision of such benefit wage statement." State of Illinois, Department of Labor, Bureau of Employment Security, Regulations and Rules, Regulation 302.

Acting on its misreading of the statute, Carson concluded that only two statements of reasons for revision of a statement of benefit wages were possible: (i) the employer was a party entitled to, but was denied, notice; and (ii) a clerical error was made. Therefore, the com-

pany stated its failure to receive notice as its reason for seeking revision.

■ Considering that the statute affords employers a second opportunity to contest the eligibility of a claimant for which they have been charged benefit wages, the statement of a reason for the revision required by the regulation necessarily must allege ineligibility of the claimant. For this reason, we find that the Department correctly ruled that Carson's application for revision of charges in category I was insufficient.

CATEGORY II

The Department denied Carson's application for revision as to the charges in category II because the company failed to satisfy the first requirement for standing under section 1508. It contends that Carson did not present a sufficient allegation of ineligibility and, thus, was not a party entitled to notice of the section 702 determination. Carson first argues that section 701 confers party status to any employer with a substantial interest and that, once established, the employer's party status is not defeated by an insufficient allegation of ineligibility under section 702. The company confuses its standing to directly appeal a section 702 decision of insufficiency with the requirements for standing under section 1508.

Standing under section 1508 of the Act is severely restrictive. Only those employers who satisfy both of the statutorily imposed criteria may object to the statement of benefit wages. The first requirement for standing, at issue here, is that the employer must have been a party entitled to notice of the "finding, reconsidered finding, determination, or reconsidered determination." Sections 701 through 703 designate which employers are entitled to such notice.

Section 701 of the Act authorizes the claims adjudicator to notify the claimant's most recent employer and "such other party to the 'finding' as the Director may by regulation prescribe, of his 'finding,' to the extent of such party's interest in the 'finding.' " (Ill. Rev. Stat. 1981, ch. 48, par. 451.) Regulation 22A(1)(b) increases those to be notified to include any other employers who paid wages to the claimant during the base period. Section 702 (Ill. Rev. Stat. 1981, ch. 48, par. 452) provides for two types of notice: determination and decision of insufficiency. Notice of determination (as to whether or not a claimant is eligible for waiting period credit or benefits and the amount of benefits he is to receive) is required to be sent to "such employing unit as shall *** have filed a sufficient allegation that the claimant is ineligible to receive benefits." However, where the allegation of ineligibility

is deemed insufficient, this section also provides for the claims adjudicator to send notice of his decision of insufficiency to the employer. Notice of a section 703 *reconsidered finding* or *reconsidered determination* must be "given to the parties entitled to notice of the original determination or finding." (Ill. Rev. Stat. 1981, ch. 48, par. 453.) Thus, this section does not, in and of itself, designate any employers who are entitled to notice.

■ The language in section 701 relating to a party's interest is merely a limitation on the content of the notice required by that section and has no bearing on the issue of standing under section 1508. Therefore, that portion of the company's argument must fail.

■ Clearly, Carson was a party entitled to notice of the decision that its allegations of ineligibility as to the category II claimants had been deemed insufficient. Entitlement to notice of the *decision* of insufficiency and to the *determination* under section 702, however, are mutually exclusive. Section 1508 does not confer standing to an employer entitled to notice of a section 702 decision of insufficiency. Thus, Carson does not have standing to object to the statement of benefit wages under section 1508 as to the charges grouped into category II.

Carson continues by attempting to argue the sufficiency of its section 702 allegations. However, such is not a proper subject for this appeal. Nothing herein abridges the company's right to contest the decisions of insufficiency through direct appeal. Here, we are concerned exclusively with issues appealable through section 1508 of the Act.

### CATEGORY III

■ The Department denied Carson's application for revision as to the 17 charges grouped into category III because Carson did receive notice of the section 702 determinations and, thus, did not have standing under section 1508. Carson mistakenly contends that standing under section 1508 is determined singularly by whether the employer is a party entitled to notice under section 701 or section 702. While we agree that being a "party entitled to notice" of the determination satisfies the first requirement for standing under section 1508, this alone does not confer standing. Our legislators have clearly and unambiguously predicated standing on two criteria. First, the employer must be a party entitled to notice of the "finding, determination, reconsidered finding, or reconsidered determination." Secondly, however, he must not have received the notice to which he was entitled.

The purpose underlying this second requirement is clear from the statutory scheme of the Act. Review under section 1508 operates as a

fail-safe mechanism in the event the employer did not receive the notice to which he was entitled under section 701 or section 702. The Act provides a more direct method of review when the employer, as in this case, has received notice of a determination. See Ill. Rev. Stat. 1981, ch. 48, pars. 452, 470 through 473.

 As to the 17 charges in category III, Carson did receive the section 702 notice to which it was entitled. It had the right to, and indeed did, appeal those determinations. Therefore, Carson does not have standing to avail itself of review under section 1508 of the Act.

Given our holding here, we dismiss Carson's cross-appeal for an award of reasonable expenses of litigation, including attorney fees.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

JIGANTI, J., concurs.

PRESIDING JUSTICE McMORROW, dissenting:

I respectfully dissent. The Department maintains that the Act sets forth a particularized employer "standing" requirement designed to alleviate the Department's administrative burden to notify employers of a claimant's eligibility for unemployment compensation benefits. To lessen the Department's administrative notice obligation, the Department contends, the Act limits entitlement to notice of Department "findings" and "determinations," and thereafter the right to challenge wage benefit charges, to those employers who have filed "sufficient" allegations of possible ineligibility and have renewed those allegations in an application for revision of wage benefit charges.

Carson argues, the able trial court judge found, and I agree, that the Department's interpretation and application of the Act have narrowed the Act's requirement in a manner not contemplated by the Illinois legislature. In so doing, the Department has erected a labyrinth of barriers to employer standing that is simply not found in the language of the Act itself. I also agree with Carson and the trial court that the Department's "sufficiency" standard is in error because it is considerably more stringent than the sufficiency standard embodied in the Act. I would also hold that the Department's hearing upon Carson's application for revision operates as a waiver of any argument by the Department that Carson was not entitled to cancellation because its allegations of possible ineligibility were factually insufficient. As a

result, I am unable to concur in the majority's opinion adopting the Department's positions in the case at bar.

## I

The majority's entire analysis, as well as the arguments of the Department, hinge upon the assumption that an employer must file a "sufficient" allegation of possible ineligibility in order for the employer to have "standing" "to object" to wage benefit charges through a section 1508 application for revision. According to the majority and the Department, this "sufficient" allegation must be presented by the employer with respect to a section 701 "finding," a section 702 "determination," and in the substance of a section 1508 "application for revision."

Both the majority and the Department misconstrue the roles of an employer's allegation of possible ineligibility, and an employer's application for revision of wage benefit charges, in the overall scheme of the Act. The purpose of an employer's allegation of possible ineligibility is to allow the employer the opportunity to challenge a claimant's entitlement to benefits at the time the Department makes its decision of whether the claimant is in fact entitled to benefits (a section 701 "finding"), and if so, what amount of benefits are appropriate for a particular period of time (a section 702 "determination"). Once the Department's "findings" and "determinations" are made, the Department is directed to so notify all employers who have filed allegations of possible ineligibility with regard to that claimant. If the employer is not so notified, it is entitled to cancellation of wage benefit charges deriving from the "findings" and "determinations" of which it was deprived notice, pursuant to an employer's section 1508 application for revision.

Thus, the legislature's intent in enacting section 1508 is to provide for cancellation of wage benefit charges erroneously assessed against an employer by reason of an administrative or clerical error. The administrative error anticipated by section 1508 is the error of imposing wage benefit charges upon an employer without providing the employer the requisite notice and opportunity to be heard, which are, in conjunction with section 1508, an inherent part of the claims-processing provisions of the Act. Section 1508 provides for an internal correction mechanism to remedy the administrative error of failure of notice to the employer, through the cancellation of inappropriate wage benefit charges, in order to avoid the time, delay, and expense of the Department's defense of circuit court litigation with respect to those charges. As the majority itself notes, "the likelihood of an administra-

tive error resulting in the Department's failure to send the requisite notice of a claim to the employer was contemplated and compensated for by the legislators in the drafting of this Act." 164 Ill. App. 3d at 538.

A

To support its theory that section 1508 is designed to offer employers a second chance to demonstrate that a claimant was ineligible for benefits, the Department argues, and the majority agrees, that the language of the Act itself mandates that an employer's application for revision include an allegation of possible ineligibility. The position is not well taken. There is nothing in section 1508, or sections 701 and 702, which requires an employer to include, in its application for revision, an allegation that the claimant was ineligible for benefits.

The majority and the Department also reason that the Department's Regulation 302, adopted pursuant to section 1508, properly calls for the inclusion of an allegation of possible ineligibility in an employer's application for revision of wage benefit charges. Section 1508 accords to the Department the authority to determine the "time and manner" of an employer's application for revision. However, the Department's interpretation of its own "time and manner" regulation, in furtherance of section 1508, cannot engraft upon section 1508 a "substantive" component to an application for revision that is not embodied in section 1508. (See generally, e.g., Shanahan v. Edgar (1986), 149 Ill. App. 3d 868, 501 N.E.2d 197.) Thus, Regulation 302, as construed by the Department, exceeds the scope of section 1508, and attempts to require more from an employer's application for revision than that called for in the statute itself.

It is significant that the Department's construction of section 1508, adopted by the majority, permits the Department to effectively deprive a claimant of unemployment compensation benefits on an ex parte basis. The majority's interpretation deprives a claimant of his right to notice and an opportunity to be heard with respect to the employer's allegation that the claimant is ineligible for those benefits. Such a construction is contrary to the rule that statutes are to be interpreted in a manner that does not render them unconstitutional. See generally, e.g., Costello v. Unarco Industries, Inc. (1986), 111 Ill. 2d 476, 490 N.E.2d 675.

I note that the position of the Department that section 1508 is intended to provide employers a second opportunity to demonstrate a claimant's ineligibility allows the agency to consider two separate and unrelated matters in one hearing, a procedure not provided for in the

Act. There is nothing that permits the Department to determine both a claimant's entitlement to benefits, and an employer's entitlement to cancellation of wage benefit charges, in one proceeding. See generally *Owens-Illinois, Inc. v. Bowling* (1983), 95 Ill. 2d 397, 401-03, 447 N.E.2d 1324.

## B

The majority also concludes that Carson lacked "standing" to challenge its wage benefit charges because Carson's allegations of possible ineligibility, which it had previously filed with the Department, were "insufficient." The majority adopts the Department's general position that "sufficiency" of an employer's allegation of possible ineligibility dictates whether the employer has "standing" "to object" to wage benefit charges in a section 1508 application for revision. I submit that the sufficiency or lack thereof of an employer's allegation of possible ineligibility is an improper standard by which to determine status or standing to object to wage benefit charges. Status or standing should not derive, as the trial court noted, "from the degree of specificity relating to the allegations of the grievance—but rather who is the most recent employing unit and the interest involved and its objectives."

I also note that the majority never explains what is "sufficient" for purposes of an employer's allegation of possible ineligibility. I agree with Carson's argument that an employer's allegation of possible ineligibility is "sufficient" if it presents factual allegations which tend to show that the claimant may be ineligible for benefits. (See Ill. Rev. Stat. 1981, ch. 48, par. 452; Ill. Rev. Stat. 1979, ch. 48, par. 452; see generally *Board of Managers of Dominion Plaza One Condominium Association No. 1-A v. Chase Manhattan Bank* (1983), 116 Ill. App. 3d 690, 452 N.E.2d 382; *Sostak v. Sostak* (1983), 113 Ill. App. 3d 954, 447 N.E.2d 1345.) The trial court's finding that Carson's allegations of possible ineligibility were in sufficient compliance with the Act was not error, and the court properly ordered their cancellation.

## II

I also disagree with the majority's treatment of the Department's hearing upon Carson's application for revision. The majority reasons that although "Carson's application was deemed insufficient; *** it erroneously was granted a hearing." (164 Ill. App. 3d at 539.) The majority then observes that it "fail[s] to discover, and Carson fails to show ***, any manner in which it was prejudiced by the granting of a hearing where one could have been denied. Thus, Carson was granted

more due process protection than it was entitled to and, although in error, the granting was to the benefit of the company, causing no harm." 164 Ill. App. 3d at 539.

The majority is in error that Carson was not prejudiced by the procedure adopted by the Department. By concluding that Carson's allegations of possible ineligibility were "insufficient," for lack of sufficient *factual* allegation regarding the claimant's possible ineligibility, the Department deprived Carson of its right to amend its application to satisfy the Department's "sufficiency" standard prior to a hearing on Carson's application. Thus, once it held a hearing, the agency foreclosed Carson's statutory right to amend its application for revision. The prejudice to Carson is obvious, since the Department refused to cancel wage benefit charges on the sole premise that Carson's allegations of possible ineligibility were factually "insufficient."

Furthermore, the Department's allowance of a hearing on Carson's application for revision effectively waived any claim from the Department that Carson's application was factually insufficient, and the Department cannot now urge that factual insufficiency as a basis for the Department's refusal to cancel the wage benefit charges Carson challenged in its application for revision.

Carson also requested cancellation of wage benefit charges deriving from referee and board of review decisions of which Carson was never notified. Section 1508's references to sections 701 and 702 subsume or incorporate by necessary implication administrative appellate review orders thereon of which an employer was deprived of notice. Accordingly, the trial court correctly ordered their cancellation here.

Because the majority dismisses Carson's cross-appeal without discussion of its substantive merit, I do not address the arguments raised therein.

For the reasons stated, I respectfully dissent.