NATHANAEL MATTHEWS, Plaintiff-Appellant, v. THE WILL COUNTY DEPARTMENT OF PUBLIC AID, Defendant-Appellee.

Third District   No. 3—86—0464

Opinion filed February 17, 1987.

Nathanael Matthews, of Joliet, for appellant, *pro se.*

Neil F. Hartigan, Attorney General, of Springfield (William Arnold and James C. O'Connell, Assistant Attorneys General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The plaintiff, Nathanael Matthews, appeals from an order of the circuit court of Will County affirming an order from an administrative hearing, the effect of which was to uphold a decision of the Will County Department of Public Aid (the Department) to terminate payments for aid to the dependent children of the plaintiff.

The record tends to show that on December 2, 1980, Ms. Triche, a welfare reform self-support broker from the Illinois Department of Public Aid's Bureau of Social Services, sent the plaintiff a letter advising him to apply by December 12, 1980, for a job which had become available through the Joliet-Will County Community Action Agency. The opening was for a low income energy assistance program coordinator and had a starting yearly salary of $13,000 to $15,000. Ms. Triche's letter reminded the plaintiff that by law he was obligated to accept an offer of suitable and available employment as a condition of eligibility for aid.

On December 9, 1980, the plaintiff went to the Community Action Agency to inquire about the coordinator job. Instead, he was interviewed for a teaching position, which paid approximately $10,000 annually. When the plaintiff was offered the teaching position, he refused to immediately accept it, stating that he still wanted to interview for the coordinator position due to its higher salary. He was told that he would have to come back for that interview. After he returned for the interview, the interviewer told him that he was not qualified.

On December 15, 1980, the Department notified the plaintiff that it was terminating his Aid to Families with Dependent Children (AFDC) benefits and his food stamps because he had failed to accept

an offer of suitable and available employment. The plaintiff then attempted to accept the teaching position offer, but was told that he was too late. The plaintiff appealed. The Department subsequently agreed to reinstate his food stamps; and the plaintiff agreed to withdraw his appeal on that issue.

The defendant argues on appeal that the Department erred in terminating his AFDC benefits when it did not make it clear that he had to accept the teaching position before he had interviewed for the coordinator position.

■■ ■ As a condition of continued eligibility for AFDC benefits, all nonexempt public assistance recipients aged 16 to 64, have to be registered either with the Work Incentive Program (WIN) if they reside in a WIN county or with Job Service if they reside in a non-WIN county. Recipients also have to actively seek employment and accept an offer of suitable and available employment as a condition of eligibility. (42 U.S.C. sec. 645(b)(1)(B) (1982); Ill. Rev. Stat. 1981, ch. 23, sec. 11—20; IDPA Rule 3.31, codified as amended in 89 Ill. Admin. Code 114.64(a) (1985); AFDC Manual PO-470.) An agency's administrative rule made in the exercise of power delegated by a statute should be construed together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason. (*People v. Johnson* (1977), 68 Ill. 2d 441, 369 N.E.2d 898.) The rule must be in accordance with the statutory authority vested in such agency, must be reasonable, and must be adequately related to the purpose of the underlying act. It also must be neither arbitrary nor in contravention of any express statutory provision. (*People ex rel. Charles v. Telford* (1977), 48 Ill. App. 3d 928, 363 N.E.2d 613.) To the extent that the rule conflicts with the statute, the rule is invalid. *Montgomery Ward Life Insurance Co. v. Department of Local Government Affairs* (1980), 89 Ill. App. 3d 292, 411 N.E.2d 973.

The stated purpose of the Illinois Public Aid Code (the Code) (Ill. Rev. Stat. 1985, ch. 23, par. 1—1 *et seq.*) is "to assist in the alleviation and prevention of poverty and thereby to protect and promote the health and welfare of all the people of this State." To this end, the Code instructs the Illinois Department of Public Aid to establish standards which "will encourage and assist applicants and recipients to maintain a livelihood compatible with health and well being and to develop their self-reliance and realize their capacities for self-care, self-support, and responsible citizenship." Ill. Rev. Stat. 1985, ch. 23, par. 1—1.

■ The animosity Ms. Triche showed toward the plaintiff at the administrative hearing, during which she repeatedly berated him for

being on public aid, makes us generally doubt whether the Department is following its legislative mandate. In the instant case, we are quite sure that it was not following the legislature's intent. While the statutes and rules are designed to encourage recipients to become self-sufficient, they are not intended to purge the rolls by tripping-up the unwary.

We find it quite logical that the plaintiff believed he could still interview for the higher paying, coordinator position, even though he was being offered the teaching job. He was given no notice otherwise and it was the coordinator position for which Ms. Triche had sent him to be interviewed. Ms. Triche explained at the hearing, however, that she knew about the teaching position and therefore stated on the client referral form sent to the Community Action Agency that the plaintiff had worked as a substitute teacher. Apparently, the plaintiff should have read her mind.

This case involves an understandable misunderstanding for which the Department bears at least half the blame. The tragedy is that rather than simply trying to assure that such misunderstandings would not occur in the future, the Department terminated the plaintiff, his wife, and their children from AFDC and food stamps, leaving the plaintiff without a job and without aid. While our decision will partially remedy this injustice, we cannot fully redress the suffering this undoubtedly caused the plaintiff and his family. In the future, we hope the Department will be more concerned with implementing its legislative mandate and less concerned with drowning some of the most vulnerable members of our society in its ocean of rules.

For the reasons stated, the judgment of the circuit court of Will County affirming the administrative decision is reversed, the Will County Department of Public Aid is directed to resume AFDC payments to the plaintiff, and those payments are to be made retroactive to the date of their termination.

Reversed with directions.

BARRY and WOMBACHER, JJ., concur.