KANKAKEELAND COMMUNITY ACTION PROGRAM, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF COMMERCE AND COMMUNITY AFFAIRS *et al.*, Defendants-Appellees.

First District (6th Division) No. 1—87—3487

Opinion filed May 4, 1990.

Foss, Schuman, Drake & Barnard, of Chicago (George C. Pontikes, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Karen S. Rosenwinkel, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff Kankakeeland Community Action Program, Inc. (KCAP), brought an administrative review action and sought to reverse the decision of defendant Illinois Department of Commerce and Community Affairs (the Department), which terminated Federal funds distributed through the Department to three KCAP programs. The circuit court affirmed. Plaintiff appeals.

The issues presented on appeal are: (1) whether the Department's action to terminate grant funding was a violation of constitutional due process or required Federal statutory procedure; (2) whether the regulations under which the Department terminated grant funding violate constitutional due process or Federal statutes for termination procedure; (3) whether the Department failed to provide proper notice in violation of Illinois statute; (4) whether the Department violated Illinois law by failing to provide adequate discovery; and (5) whether the Department had the authority to order an agency-wide audit at the time it terminated the KCAP grant. We affirm on all issues.

The undisputed facts are that the Department is a grantee of Federal funds from the United States Department of Health and Human Services (DHHS). In 1986 and several years prior, the Department entered grant agreements with KCAP for the Illinois Home Energy Assistance Program, the Community Services Block Grant Program, and the Illinois Weatherization Assistance Grant Program. Under these agreements, the Department would grant Federal funds to KCAP which, in turn, would use the money to support job training, energy assistance, emergency medical care and other services for the poor.

The weatherization grant could have been funded by either DHHS or the Department of Energy (DOE). According to the "Notice of Grant Award" for that grant, KCAP would receive no money from DOE and $266,452 from DHHS.

Each grant agreement provided the Department with the right to audit KCAP "as often as deemed necessary" and to "examine corporate books and records which may be necessary to determine the ability of the grantee to safeguard the funds." The Department also reserved the right to terminate the grant if KCAP failed to comply with the conditions of the grant. Finally, each agreement said: "Payments made to Grantee or recoveries by the Department shall be in accord with the legal rights and liabilities of the parties."

Acting under the requirements of Federal and State statutes, the Department reviewed KCAP's books in April 1985, and began communicating about certain problems in May. Finally, the Department notified KCAP that it would terminate the three grants effective February 3, 1986, unless KCAP sent permission authorizing a public accounting firm to conduct an agency audit scheduled to begin on that date. Since KCAP did not send this permission, the Department terminated funding.

The Department then sent a letter to DHHS requesting that the agency review the termination of the community services block grant under section 676(a) of the authorizing act, the Community Services Block Grant Act (Act) (42 U.S.C. §9905(a) (1986)). DHHS wrote to the Department, stating that under section 675(c)(11) of the Act no Community Action Agency (CAA) funding could be terminated for cause unless notice of such termination had been given and an opportunity for a hearing on the record had been provided. On February 25, 1986, the Department responded by rescinding the termination of this grant, notifying KCAP that the funding had been suspended, and giving KCAP until March 1 to request a hearing pursuant to section 675(c)(11). 42 U.S.C. §9904(c)(11) (1986).

On February 28, 1986, KCAP requested an administrative hear-

ing. The Department notified DHHS of this development and informed the Federal agency that funds to KCAP would be suspended until the hearing. On March 13, DHHS replied, stating that it believed section 675(c)(11) of the Act means that funding cannot be stopped until after a notice, hearing, and final review by DHHS. The Department wrote back on March 18 noting the possible liability which the State of Illinois might assume pursuant to section 675(g) if it allowed KCAP to expend monies in violation of State and Federal law. (See 42 U.S.C. §9904(g) (1986).) The Department stated it would not rescind the suspension unless DHHS sent assurances that the State would not be liable for monies misspent by KCAP.

The Department served KCAP with its initial notice of hearing and statement of charges sometime prior to March 28. On April 1, the hearing officer granted KCAP's motion to strike this notice on the grounds that the notice did not comply with the requirements of section 676(a). On April 14, the officer ordered the Department to notify KCAP of the specific charges and cite relevant sections of statutes and Department rules. That order also stated that the hearing date was set for April 24, 1986, by stipulation of the parties.

On April 14, the Department sent a second notice charging KCAP with failure to: (1) permit an audit commissioned by the Department; (2) safeguard grant funds and assure proper expenditures; and (3) assure that KCAP operated under the direction of a properly constituted Community Action Agency Board. The notice also specified the relevant grant provisions, regulations and statutes. On April 15, KCAP made a second motion to strike the notice, which was denied.

On April 15, KCAP served a motion for production of documents, requesting the complete Department file on KCAP, the Department plans for the three KCAP grants, and information about the existence of and special conditions for all Energy Assistance Block Grants, Illinois Weatherization Assistance Grants and Illinois Community Services Grants in existence in 1986 for any Illinois Community Action Agencies. This motion was denied.

KCAP renewed the motion at a hearing on April 24. At that time, KCAP admitted that it had draft copies of the State plans for these KCAP grants. The parties stipulated that these were, in fact, the operating plans. The Department argued that the other materials requested lacked relevance to KCAP's case and producing these documents would place a severe burden on the Department. The hearing officer then denied the motion but assured KCAP he would order the production of additional documents if subsequent testimony showed they might be relevant.

Administrative hearings were held on April 24, May 2, and May 9. During the hearings, KCAP claimed that the Code of Federal Regulations for grants under DOE should apply to the procedures for suspending and terminating the KCAP weatherization grant. (See 10 C.F.R. §§600.121, 600.122 (1986).) After reviewing the grant contract and hearing testimony about the funding for this grant, the Department decided that DOE code provisions did not apply because the weatherization grant in question was funded entirely by DHHS.

KCAP also asserted that the Department had no authority under statutes in existence at the time to demand an agency-wide audit of KCAP's books. The hearing officer and Director Hedges found that this authority was implicit in the grant agreement and in Federal statutes authorizing the grant.

On June 23, 1986, Hedges issued the final decision, which terminated the energy assistance and weatherization grants directly and terminated the community services grant effective upon confirmation of DHHS.

I

Plaintiff first contends that the Department's action to terminate grant funding without a notice and hearing terminated KCAP's property rights in violation of constitutional due process under the fourteenth amendment and statutory procedure under legislation that authorized the grants.

KCAP contends that the Department violated due process by terminating its funds on February 3, 1986. Therefore, KCAP maintains, this action is invalid.

According to facts in the record, the Department began investigating KCAP in April 1985 and notified KCAP about problems in May. Finally, on January 26, 1986, the Department notified KCAP it would terminate funds on February 3 unless KCAP sent permission for an audit scheduled to begin on that date.

Subsequently, the Department acknowledged that it could not terminate funds without notice and the opportunity for a hearing. On February 25, the Department rescinded the grant termination, suspended funds, and notified KCAP that it had until March 1 to request a hearing.

KCAP has also argued that Federal code provisions for the suspension of weatherization grants under the Department of Energy apply. However, the grant funding document clearly states that this particular grant was funded solely by DHHS, and the record contains no evidence to the contrary. Therefore, we agree with the hearing of-

ficer that DOE code provisions do not apply.

Three days of hearings were held in April and May followed by a decision to terminate funds announced on June 23, 1986.

In sum, KCAP did not receive a notice and hearing before funds were terminated on February 3, 1986. KCAP bases its constitutional claim on that undisputed fact. KCAP ignores another undisputed fact, namely, that the Department corrected this error by serving notice and holding the hearings which resulted in a second termination on June 23. In effect KCAP is suggesting that once the Department makes any procedural error while attempting to terminate a grantee for cause, then the Department must cease this effort and allow the grantee full grant funds regardless of whatever good cause there may be for termination. We cannot accept such a conclusion.

For these reasons, we hold that the Department did not violate constitutional due process or statutory procedure when it suspended the DHHS grants to KCAP on February 25, 1986, and terminated them on June 23.

What remains is the effect of the Department's improper attempt to terminate the grant February 3, 1986, which was rescinded and replaced by suspension on February 25. Plaintiffs did not claim damages for funds lost in the interval between the invalid termination and the suspension, nor do the briefs or grant documents suggest how these could be calculated.

## II

Plaintiff claims as a second issue that the Department regulations for termination violate statutory procedures and constitutional due process. In its statement of issues, KCAP phrased this issue as a direct challenge to Illinois regulations as written. In the text of its brief, KCAP challenged the law as applied in the action terminating the grants here, which action was discussed under issue one. Now we will consider plaintiff's stated issue, whether the regulations *per se* are invalid.

■ The Illinois Administrative Code provides that if a grant recipient "fails to comply with the terms and conditions of the grant award," the Department can "suspend the grant and withhold further payments" pending the grantee's corrective action or the Department's decision to terminate. (47 Ill. Adm. Code §1.110(a) (Supp. 1986).) Furthermore, if the Department determines that a grant recipient has failed to comply with terms and conditions, the Department can terminate the grant and then notify the grantee in writing of this decision, the date, and the reasons. 47 Ill. Adm. Code §1.110(b)(2)

(Supp. 1986).

Administrative regulations are presumed valid under statutes affected by the regulations unless these rules are clearly arbitrary, unreasonable or capricious and persons challenging the validity of regulations bear the burden of proving the invalidity. (*Begg v. Board of Fire & Police Commissioners* (1984), 99 Ill. 2d 324, 331-32, 459 N.E.2d 925, 928.) When courts interpret these rules in conjunction with a statute, they should construe the rules "together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason" and judge these rules invalid only to the extent that they conflict with a statute. *Matthews v. Will County Department of Public Aid* (1987), 152 Ill. App. 3d 400, 402, 504 N.E.2d 529, 531.

The regulation at issue here incorporates the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1987, ch. 127, par. 1000 *et seq.*). (47 Ill. Adm. Code §1.140 (Supp. 1986).) That Illinois act requires notice and opportunity for a hearing and incorporates any specific features provided or precluded by other relevant law. (Ill. Rev. Stat. 1987, ch. 127, par. 1010.) Thus the Illinois act provides its own rules as a minimum and incorporates any relevant procedural requirements from other statutes. In this case, the other procedures are outlined in the statutes which authorize grant funding, and these statutes are cited in the grant documents.

KCAP also states that the Illinois regulations do not include the notice and procedure requirements and the suspension limits of 10 C.F.R. §§600.121(a) and 600.122 (1987) that apply to funding under DOE. As discussed in issue I, however, the regulations for DOE do not apply to the weatherization grant in issue because it was funded entirely by DHHS.

Second, legislative enactments are presumed valid under both the United States and Illinois constitutions, and the party challenging them on constitutional grounds must show that they are unreasonable, arbitrary, and with no foundation in police power. *People v. Copeland* (1980), 92 Ill. App. 3d 475, 479-80, 415 N.E.2d 1173, 1177-78.

KCAP contends that Illinois rules for grant termination violate both the United States and Illinois constitutions by allowing a deprivation without due process. (U.S. Const. amend. 14; Ill. Const. 1970, art. I, §2.) KCAP relies on *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011, and argues that the State may not terminate a property interest prior to notice and the opportunity for a proper hearing.

The Illinois Administrative Code (Code) allows the Depart-

ment to terminate a grant if the grantee fails to comply with the terms and conditions of the grant. (47 Ill. Adm. Code §1.110(b)(2)(A) (Supp. 1986).) That appears to be a reasonable way to safeguard public funds from misuse by grantees. Furthermore, as we have already described above, the Code incorporates other relevant law. (47 Ill. Adm. Code §1.140 (Supp. 1986).) This law includes provisions for notice leading to a formal hearing on the record and any other due process requirements under relevant State or Federal law. (Ill. Rev. Stat. 1987, ch. 127, par. 1010.) In effect, the Illinois Code sets a minimum standard but also directs the Department to meet any relevant higher standard, including State and Federal constitutional requirements for due process.

In sum, the Illinois Code incorporates relevant provisions for due process from other legal sources. For this reason, we find that the Code does not violate the due process requirements of Federal statutes or either the United States or Illinois constitutions.

### III

Third, KCAP claims that the Department violated the Illinois Administrative Procedure Act by failing to provide KCAP with proper notice and a statement of charges before a hearing scheduled for April 11, 1986.

■ Under the Illinois Administrative Procedure Act, parties in contested cases are entitled to "reasonable" notice which includes "a short and plain statement of the matters asserted." (Ill. Rev. Stat. 1987, ch. 127, par. 1010(a)(4).) Furthermore, the charges for an administrative hearing do not need to be drawn with the precision required for judicial pleadings but "need only be drawn sufficiently so that the alleged wrong-doer is reasonably apprised of the case against him to intelligently prepare his defense." *Rasky v. Department of Registration & Education* (1980), 87 Ill. App. 3d 580, 585, 410 N.E.2d 69, 75.

On April 1, the Department hearing officer granted KCAP's motion to strike the first notice on the grounds that it did not comply with the requirements of the Federal grant. On April 14, the officer ordered the Department to serve notice with "further details concerning the specific charges" and sections of statutes or rules which related to the specifics of the formal hearing. Then, by stipulation of the parties, the hearing officer set the hearing date for April 24, 1986. The Department sent the second notice on April 14, charging KCAP with failure to permit the audit; failure to safeguard grant funds and failure to operate with a properly constituted board.

■■ Since the notice dated April 14 did list the basic charges

against KCAP and was a sufficient listing under the standards for administrative hearings, the deficiency in notice was cured before KCAP had to defend itself when the hearings actually began on April 24. Furthermore, since KCAP knew about the basic problem at issue here since at least May 1985, it had adequate warning in fact as well as in law to prepare a defense to the Department's charges.

For these reasons, we find that the Department's notice to KCAP did not violate Illinois law.

## IV

Plaintiff's fourth contention is that the Department's hearing officer violated Illinois common law and the Illinois Freedom of Information Act (FOIA) when he denied KCAP's motion to compel the production of documents.

██ When reviewing the actions of an administrative tribunal, the trial and appellate courts are limited to finding whether the administrative body's actions were "arbitrarily in clear abuse of its discretion." *Mead v. Board of Review* (1986), 143 Ill. App. 3d 1088, 1094-95, 494 N.E.2d 171, 176.

██ Parties in administrative proceedings should use prehearing discovery as parties in trials use pretrial discovery, that is, to aid in preparing a case and eliminating surprise so that the outcome can rest on truth rather than on the maneuvers of counsel. (*Wegmann v. Department of Registration & Education* (1978), 61 Ill. App. 3d 352, 356, 377 N.E.2d 1297, 1301.) Additionally, parties can request State documents through the FOIA (Ill. Rev. Stat. 1987, ch. 116, par. 201 *et seq.*).

██ KCAP asserts that the hearing officer denied discovery in violation of both common law and the FOIA. The record shows that KCAP requested production of documents from the Department twice and the requests were denied by the hearing officer both times. The record also shows that both parties stipulated that KCAP had draft copies of the documents related to the grants at issue, and these drafts were in final form. Furthermore, the hearing officer stated he would request production of any other documents should their use appear relevant during the course of the hearings. The hearing officer also held that further production of all documents from all Federal grants for all Community Action Agencies administered by the Department in 1986 would place an unreasonable burden on the Department.

The record, at least as cited by KCAP, does not show any requests made under the FOIA.

The facts on record show that KCAP did, in fact, have the documents it needed to defend itself and avoid surprise. It also had the assurance of further production should that appear necessary during the course of hearings. Under the circumstances, the actions of the hearing officer in denying the production of documents which would have burdened one party without benefiting the other was not unreasonable.

For these reasons, we do not find that the hearing officer abused his discretion when he denied KCAP's motions for additional discovery.

## V

For its fifth issue, KCAP argues that the Department did not have the authority to order an agency-wide audit at the time it terminated the KCAP grant.

An agency does not have any greater power than that conferred by its enabling legislation. (*Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503, 506, 363 N.E.2d 814, 815.) Agency action which exceeds this authority is void. (*Oak Liquors, Inc. v. Zagel* (1980), 90 Ill. App. 3d 379, 380-81, 413 N.E.2d 56, 58.) Furthermore, courts exercise independent review over an agency decision which interprets a question of law and cannot let a decision stand which is based on an erroneous construction of a statute. *Carson Pirie Scott & Co. v. Department of Employment Security* (1987), 164 Ill. App. 3d 530, 535, 518 N.E.2d 161, 164.

At the time when the Department began investigating KCAP, Illinois law did not grant it explicit authority to conduct an agency-wide audit of a grantee. The Community Services Block Grant Act, however, gave the Department authority to "provide that fiscal control and fund accounting procedures *** as may be necessary to assure the proper disbursal and accounting for Federal funds paid to the State under this chapter." (42 U.S.C. §9904(c)(9) (1986).) The other relevant acts provided similar authority. See 42 U.S.C. §§6867(c), 8624(b)(10) (1986).

KCAP now contends that this language limited any Department investigation solely to the accounts for a particular Federal grant. KCAP admits that the grant agreements allowed the Department "to have full access to any pertinent books, documents, papers and records of the Grantee involving transactions related to this Grant." KCAP, however, interprets this agreement to mean that the Department was limited to fiscal accounts of a particular grant. Furthermore, KCAP maintains, if the grant agreement is ambiguous and

could be interpreted more broadly, the court should construe the contract against the Department which chose the words and was responsible for any ambiguity.

The Department claims that the language of the Federal grants was broad enough to authorize an agency-wide audit if this was necessary to safeguard Federal funds. Furthermore, the many discrepancies in the KCAP accounts appeared to cover more than a single grant. Only an agency-wide audit could provide the safeguard required by the Federal statutes.

The hearing officer concluded that the statutes which require the Department to safeguard funds also give the Department the authority to conduct the necessary audit. This appears to be a reasonable construction of the statute.

For these reasons, we find that the hearing officer did not err in concluding that the Department operated within its statutory authority when it requested an agency-wide audit from KCAP.

For the reasons stated above, the judgment of the trial court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and EGAN, J., concur.